17 N.J. Super. 295 (1952)
86 A.2d 36
CITY OF NEWARK, PLAINTIFF-APPELLEE,
v.
NATHAN E. ZEMEL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Essex County Court Law Division.
Decided January 11, 1952.
*296 Mr. Louis Weiss, attorney for the plaintiff-appellee.
Mr. Louis Zemel, attorney for the defendant-appellant.
FRANCIS, J.C.C.
The defendant appeals from two judgments of conviction in the Municipal Court of Newark for violations of section 1047, paragraph 2, of the ordinances of that city, requiring that in each dwelling, tenement house or place of abode "there shall be at least (1) water closet provided for each apartment or family."
The facts of the alleged violations are not in dispute. It was proved that at one of the premises owned by the defendant, 20 Rutgers Street, there was but one toilet, located in the hall on the second floor, to serve the needs of the two tenants living on that floor. At the other premises in question, 220 Prince Street, there were two families living on the second floor and two on the third floor. Only one toilet was located *297 on each floor to serve the two families living there, access to each toilet being gained by doors opening therein from each of the apartments served.
The plaintiff offered proof to establish the reasonableness and necessity for this provision of the ordinance. The reasons advanced were: (1) that the sharing of a common toilet by two tenants results in the failure of either or both to keep the toilet clean, thereby causing an unhealthful condition to come about; and (2) the possibility of the transfer of infections and body lice from one family to another, or even from strangers who might have access to a common toilet. The plaintiff also showed that one of the premises is located in the "official slum belt" of the city.
The defendant offered no testimony. At the close of the plaintiff's proofs he rested and moved for judgments of acquittal.
It is not contended that the plaintiff is without power to enact ordinances to secure the health and well-being of its citizens. The claim is made that this ordinance must be declared void because it is arbitrary and discriminatory.
The first phase of the defendant's attack on the score of arbitrariness is based upon the fact that both of the dwelling houses involved are tenement houses and that the tenement house statute (R.S. 55:8-3) requires at least one toilet for every two families in such houses erected prior to March 25, 1904. There is no proof in the record as to when these buildings were erected. In any event, the defendant does not contend that the ordinance must fall merely because it exacts a higher standard than that laid down by statute. He urges, rather, that the ordinance is invalid unless it be shown that it was "necessary * * * for the promotion of the general health and welfare" of the inhabitants of the city. Thus the defendant acknowledges, as he must, that a municipality may exceed the minimum demands of the statute so long as its enactments are necessary to the promotion of the general health and welfare. The question presented to the court, therefore, is merely whether the proofs demonstrate *298 that the ordinance bears a reasonable and necessary relation to the general health and welfare.
In determining this question it is obvious that the court may not substitute its judgment for that of the local legislative body as to the wisdom of the particular measure. Peoples Rapid Transit Co. v. Atlantic City, 105 N.J.L. 286 (Sup. Ct. 1929), affirmed on opinion below, 106 N.J.L. 587 (E. & A. 1930); Mansfield & Swett v. Town of West Orange, 120 N.J.L. 145 (Sup. Ct. 1938). To do so would be to exercise the legislative function and nullify the grants of power given by the Legislature to municipalities to regulate their affairs. It has been declared that where the subject matter of a regulation is within the police powers of the municipality it must be presumed that the ordinance is reasonable unless the contrary is shown. Wagman v. City of Trenton, 102 N.J.L. 492 (Sup. Ct. 1926). Further, the 1947 Constitution provides that "The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor." (Art. IV, sec. VII, par. 11).
Viewed in the light of these principles, can it be said that the measure does not bear a reasonable relationship to the promotion of public health? No evidence was offered to challenge the contentions of the city that infections and body lice can be spread by the common use of toilet facilities, and that the maintenance of toilets in clean condition is hampered by the division of responsibility between two families making use of a single toilet. The defendant contented himself with conducting cross-examinations geared to the negative purpose of establishing that epidemics had not resulted from common use of toilets. That the city has slum conditions to contend with was not denied. But it is impossible to escape the impression of the squalor of slum housing created by the photograph of one of the toilets, which was marked in evidence. It is reasonable to suppose that many health problems brought about by uncleanness and contagion confront *299 a city of the size and character of Newark, with dense and varied population, and with areas of substandard housing. The adoption of measures to solve these health problems need not wait upon the existence of epidemics. The public would be ill served if prevention of disease were not conceded to be a legitimate objective of the health department of a city.
Private, individual toilet facilities serve the purpose of localizing and isolating infection and other objectionable conditions. This simple expedient is not feasible in combating the same evils when associated with mass use of public toilets. However, that the expedient cannot be adapted to public or semi-public facilities is, of itself, no ground for declaring the requirement discriminatory or arbitrary. Universal application is not the test.
Though not of the same compelling force, the claim that divided responsibility might result in no one discharging the duty of keeping a common toilet clean provides further support for the view that the ordinance should be sustained. Here, again, it would appear to be good sense and reasonable practice to isolate the clean family as much as possible from the infections and unclean habits of its neighbor. How better may it be done than by avoidance of the use of the common toilet?
The cases of N.J. Good Humor, Inc., v. Bradley Beach, 124 N.J.L. 162 (E. & A. 1939), and Regal Oil Co. v. State of New Jersey, 123 N.J.L. 456 (Sup. Ct. 1939), cited by the defendant, are of no aid in disposing of the present controversy, since both cases involve aggravated instances of attempts to pervert the police power to ends not within its scope and by means not reasonably related to the acknowledged ends.
The claim that the ordinance offends by failing to set up a standard as to how many persons may safely use a particular toilet is not tenable. As this argument runs, the ordinance is arbitrary because it would permit the use of one toilet by a family of 20 persons and would forbid the use of one toilet by two families made up of three persons each. Such a contention *300 poses the question whether the city may reasonably establish a classification covering only family dwelling units and requiring that in this classification each unit must have its own toilet.
Section 1047 of the ordinance is directed entirely to prescribing minimal toilet and lavatory requirements in a great variety of situations, such as lodging houses, theatres, amusement grounds, churches, schools, workshops and factories. Requirements vary according to the class of activities carried on. The toilet facilities required in most instances comprise both water closets and urinals; lavatories and sinks are ordered in certain cases. Paragraph 2 is the only one dealing with dwellings and tenement houses. It alone contains the simple requirement of one water closet per apartment. A cursory perusal of the section convinces one that the only logical way to meet the vastly different problems is to classify and prescribe according to sanitary needs. The mandate of paragraph 2 seems entirely moderate and in keeping with the scheme of sanitation set up by the section as a whole. It seems reasonable to recognize that dwelling and tenement houses have their own toilet sanitation problems which justify the treatment of such houses as a separate class. Likewise, it seems reasonable to recognize each family or apartment as a class for toilet facility requirements. It cannot be doubted that by treating such houses or each family or apartment as a class, and prescribing certain toilet facilities for them, a higher degree of cleanliness and safety from possible infection will be attained. Nor can it be doubted that by such requirements the interest of a large individual segment of the population of the city will be served and protected. In these circumstances the classification is not illusory or arbitrary, but reasonably adapted to the end sought, namely, preservation and protection of the public health.
Our courts have frequently been called upon to determine the legal soundness of classifications established by statute or ordinance. The test of constitutionality is always *301 whether there is any reasonable basis for the classification. In Board of Health of Weehawken Township v. N.Y. Central Railroad, 4 N.J. 293 (1950) the defendant appealed from a conviction for violation of a smoke abatement ordinance. It contended that the ordinance was unconstitutional in that it excepted one- and two-family houses from its operation. After adverting to the fact that there are manifest differences between power plants and private residences, the court declared, at p. 302:
"The exigency and the remedy were peculiarly within the judgment of the local legislative body, and unless there be an utter lack of basis for the classification, the action taken is not discriminatory in the constitutional sense. * * * The Legislature may make distinctions of degree having a rational basis; and they will be presumed to rest on that basis if there be any conceivable state of facts which would offer reasonable ground for its action."
In Wagman v. City of Trenton, 102 N.J.L. 492 (Sup. Ct. 1926), an ordinance was upheld which prohibited the sale of jewelry by auctioneers at night. Falco v. Atlantic City, 99 N.J.L. 19 (Sup. Ct. 1923), raised the issue of the reasonableness of an ordinance regulating the hours of barber shops. The court sustained the ordinance, pointing to the probability that one of the reasons for setting definite hours of opening and closing was so that definite and adequate sanitary inspections could be made. In Peoples Rapid Transit Company v. Atlantic City, supra, an ordinance was approved which imposed a number of rather severe regulations and requirements on interstate, intercity and intrastate buses, but which excepted from its provisions hotel buses, school buses, taxicabs and buses operating entirely within the city. As to some of these vehicles the court found it proper to treat them as a separate class since they were already subjected to some form of regulation. School buses and hotel buses were held properly excepted as serving a vital public interest, as distinguished from buses which used the streets solely for profit.
All of these considerations lead to the conclusion that the section of the ordinance in issue here represents a reasonable *302 exercise of the police power by the city and is therefore valid. The proof of defendant's violations thereof being clear, he is found guilty. Sentence will be imposed on January 25, 1952, at 10 A.M.