## GIVNER *v.* COMMISSIONER OF HEALTH OF BALTIMORE CITY ET AL.

[No. 134, October Term, 1954.]

*Decidèd May 12, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Eugene Hettleman* for the appellant.

*W. Thomas Gisriel, Assistant City Solicitor of Baltimore,* with whom were *Thomas N. Biddison, City Solici-*

*tor,* and *Edwin Harlan, Deputy City Solicitor,* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City, dismissing a bill for declaratory judgment praying that a certain regulation promulgated by the Commissioner of Health, in regard to bathing facilities in dwelling units, be declared invalid.

By ordinance 384 adopted in 1941 and now codified as Sections 112 to 119, inclusive, of Article 12 of the Baltimore City Code of 1950, the City undertook to deal with the "Hygiene of Housing". Sec. 112 provided that "Every dwelling and every part thereof shall be kept clean and free from any accumulation of dirt, filth, rubbish, garbage or similar matter, and shall be kept free from vermin or rodent infestation. * * *." The Commissioner of Health was authorized to enforce these requirements by notice to abate "such nuisance," or in extreme cases to abate it forthwith. Failure to comply with a proper notice was made subject to criminal penalties. Obstruction of any sanitary sewer, if caused by wilful or malicious deposit of material, were likewise made subject to criminal penalties. Sec. 113 provided that "Every dwelling and every part thereof shall be maintained in good repair by the owner or agent, and fit for human habitation." Sec. 114 provided that the Commissioner of Health might order conditions abated, or otherwise improved, which he found "dangerous or detrimental to life or health". Sec. 115 set out the procedure he should follow. Sec. 116 authorized the Commissioner to order a dwelling to be vacated, if he found it to be "unfit for human habitation, or dangerous to life or health by reason of want of repair, or defects in the drainage, plumbing, lighting, ventilation or the construction of the same, * * * or for any other causes affecting the public health". Sec. 117 provided that notice given to any person in actual possession should be as effective as if given to the owner. Sec. 118 provided that "The Commissioner of Health is hereby authorized and empowered to make and adopt such rules and regulations

as he may deem proper and necessary for the enforcement of this ordinance for the better protection of the health of the city." Sec. 119 provided that "Any person violating any of the provisions of Sections 112-119, or any lawful order or regulation made and adopted by the Commissioner of Health in pursuance thereof, shall be guilty of a misdemeanor and shall be subject to a fine not exceeding $50.00 and each day's violation shall constitute a separate offense."

On March 11, 1942, the Commissioner of Health, pursuant to the power conferred upon him by Sec. 118, promulgated 17 rules or regulations. One of these made outside "hoppers" unlawful and required that toilet facilities be accessible from within the dwelling. On March 11, 1954, Regulation 9, here under attack, was adopted. It read: *"Bathing facilities.* Every dwelling unit shall contain within a room which affords privacy, a bathtub or shower in good working condition which shall be properly connected to both hot and cold water lines and to the public sanitary sewer or to an approved sanitary sewage disposal system. This regulation shall not apply to any two-story dwelling which contains not more than two dwelling units, provided there is at least one such facility available for the occupants of such dwelling. This regulation shall take effect January 1, 1956." Dwelling unit was defined in Regulation 1 as "a room or group of rooms forming a single habitable unit with facilities which are used or intended to be used exclusively by the occupants of such unit for living, sleeping, eating and cooking."

The complainant filed suit as a taxpayer and resident of Baltimore City, and as a property owner engaged in the business of buying and selling rental properties. It was alleged that he is the owner of a three-story dwelling house, known as 1607 John Street, which contains two dwelling units on each of the second and third floors. On each floor there is one bathroom, for the use of the tenants of that floor. Each dwelling unit is occupied by two persons. This arrangement would be unlawful and in violation of Regulation 9, if valid, after its effec-

tive date. No question is raised as to the right of the complainant to challenge the regulation in a proceeding for declaratory judgment.

The appellant concedes that the City possesses the power to preserve health and "prevent and remove nuisances" under the Charter and P. L. L. of Baltimore City (1949 ed.), Sec. 6(11). He also concedes that it possesses "within the limits of Baltimore City all the power commonly known as the Police Power to the same extent as the State has or could exercise said power within said limits; * * *." Sec. 6(24). He does not deny that the City may validly delegate to an appropriate City official the power to enforce its ordinances and abate nuisances. *Pocomoke City v. Oil Co.,* 162 Md. 368; *Petrushansky v. State,* 182 Md. 164. The Commissioner of Health is an appropriate official, for he is directed by Sec. 81 of the Charter to "cause all ordinances for the preservation of the health of the inhabitants of Baltimore City to be faithfully executed and strictly observed." But the appellant contends that by a proper construction of the ordinance the power to adopt regulations, conferred upon the Commissioner of Health, is limited to regulations in aid of his ministerial and administrative duty of enforcement. He further contends that if a wider power is conferred, the ordinance is invalid as an unlawful delegation of the police power to an administrative official.

On the first point, we note that a regulation requiring the installation of inside toilets was adopted almost contemporaneously with the passage of the ordinance. As pointed out by the Chancellor, there have been many criminal prosecutions, since the adoption of this regulation, in which the Commissioner's right to adopt it has been challenged and sustained by the trial courts. Likewise, in 1951, a regulation was adopted prohibiting the use of lead paint for interior painting, on the ground that it constituted a danger to teething infants. In both instances the regulations laid down general rules without reference to particular situations that might call for abatement, and might be described as legislative in character. It is true that the primary purpose of the

ordinance is to provide for abatement of conditions that in fact amount to a nuisance, but we think the power of the Commissioner is not so narrowly limited. He is authorized to make regulations "for the enforcement of this ordinance for the better protection of the health of the city", and criminal penalties are prescribed not only for violations of the ordinance, but for violation of "any lawful order or regulation made and adopted by the Commissioner of Health in pursuance thereof." To argue that the ordinance does not permit the promulgation of regulations prescribing in general terms for the prevention of conditions menacing the public health, would invert the rule of liberal construction of a remedial measure, in a field that is peculiarly within the realm of expert competence. See 7 *McQuillin, Muncipal Corporations* (3rd ed.), Sec. 24.224. It is not reasonable to assume that the Commissioner, for example, must wait for an epidemic to occur before dealing with the causes that create it. He has the admitted power to order a particular dwelling to be vacated, if he finds it "unfit for human habitation, or dangerous to life or health by reason of want of repair, or defects in the drainage, plumbing, lighting, ventilation or the construction of the same, or by reason of the existence on the premises of any condition likely to cause sickness or injury among the occupants of said dwelling, or for any other causes affecting the public health". This is a more drastic power than the one we are asked to deny, to deal prospectively by regulation with conditions that are reasonably related to the protection of the public health.

We are not here concerned with the questions presented in *Mount Airy v. Sappington,* 195 Md. 259, and *Town of Gaithersburg v. Dosh,* 201 Md. 291. In those cases it was held that ordinances prohibiting a slaughterhouse, or the keeping of livestock within the corporate limits, were *ultra vires* under local enabling acts authorizing the enactment of town ordinances to prevent or abate nuisances, and to regulate offensive trades and conditions detrimental to health. In the instant case the City of Baltimore possesses the whole police power, and

the only question is whether the attempted delegation is valid. The Commissioner of Health has not undertaken to prohibit any occupation or activity, but merely to regulate the manner or means of its exercise.

The fact that the promulgation of regulations involves the exercise of discretion and deliberation of a type that might be described as legislative in character, is not necessarily fatal, provided there are adequate standards set up to guide the Commissioner of Health in ascertaining the basic facts upon which his regulations are predicated. In this connection we note that the ordinance now under consideration was before this Court in *Petrushansky v. State, supra,* in 1943. There an indictment based upon violation of an abatement order of the Commissioner was sustained, as against a contention that the ordinance failed to set up an adequate standard. Since we now hold that the ordinance authorizes the adoption of regulations fairly designed to accomplish the same objects as an order, what was there said about the adequacy of the standard is applicable here.

The trend of the decisions in the field of administrative law is well illustrated in the zoning cases. In *Tighe v. Asborne,* 150 Md. 452, 457, the right of Baltimore City to delegate part of its police power to a zoning commissioner was sustained even though it involved determinations on his part as to "whether buildings or the proposed use of them would menace the public security, health or morals." See also *Heath v. M. & C. C. of Baltimore,* 187 Md. 296, 303, and *Montgomery Co. v. Merlands Club,* 202 Md. 279, 287. The redevelopment cases furnish another illustration. *Matthaei v. Housing Authority,* 177 Md. 506, 516; *Herzinger v. City of Baltimore,* 203 Md. 49, 62. See also *Schneider v. Pullen,* 198 Md. 64, dealing with the sufficiency of standards in a delegation to the Board of Education. In the field of public health, still more flexible standards are permitted. The concept of public health is more definite than that of general welfare, and there is a practical necessity for expert interpretation in its application to concrete situations. See

*Boehm v. Baltimore,* 61 Md. 259; *State v. Hyman,* 98 Md. 596; and *Creaghan v. M. & C. C. of Balt.,* 132 Md. 442. In *Baltimore v. Bloecher & Schaaf,* 149 Md. 648, the standard to be observed by the Commissioner of Health was simply whether or not food products were "unfit for human food". We think the standard in the instant case is sufficiently definite.

Of course, the question whether a particular regulation is arbitrary or unreasonable, or not fairly within the scope of the delegated power, is subject to judicial review. But if the matter is fairly debatable, the courts will not substitute their judgment for that of the board or official charged with the duty of promulgation or enforcement. In *Druzik v. Board of Health of Haverhill,* 85 N. E. 2d 232 (Mass.), a regulation requiring the wrapping of bread was sustained against the contention that it was unreasonable and unrelated to health, and the rule was stated and applied. In the instant case there was abundant testimony from the Commissioner of Health, his medical consultants and his lay advisory committee on sanitation, as well as from experts in the field of housing and health, to the effect that, in this time and place, the sharing of bathing facilities, particularly where the responsibility for cleaning the facilities is shared, is detrimental to physical and mental health and contributes to the spread of disease. There was no testimony to the contrary. It may well be, as the Chancellor indicated, that a visitor from abroad might be surprised to learn that a sharing of bathing facilities would render a dwelling unfit for human habitation. It is not the function of the courts to pass upon the wisdom of the regulation, or to approve or disapprove it, if it does not exceed constitutional limits. We agree with the Chancellor that the regulation was not unrelated to public health and was at least fairly debatable.

The appellant contends that the classification is discriminatory insofar as it makes an exception in the case of two-story dwellings containing not more than two families. But the Commissioner of Health explained that the reason for the exception was that in the great

majority of cases such dwellings are occupied by family groups who would presumably exercise greater care in regard to the cleaning of the facilities and the exercise of reasonable health precautions. Classification always involves the drawing of a line, and we are not prepared to say that the line drawn is not based on any rational distinction. It is not necessary that the regulation have a universal application. Cf. *Board of Health v. New York Cent. R. Co.*, 72 A. 2d 511 (N.J.), and *City of Newark v. Zemel*, 86 A. 2d 36 (N. J. County Ct.).

*Decree affirmed, with costs.*