TURF VALLEY ASSOCIATES *v.* ZONING BOARD
OF HOWARD COUNTY

[No. 89 (Adv.), September Term, 1971.]

*Decided June 29, 1971.*

*Motion for rehearing filed July 19, 1971; denied September 13, 1971.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Bernard F. Goldberg* for appellant.

*Thomas E. Lloyd, County Solicitor,* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Turf Valley Associates, the appellant, owns some eleven hundred acres of land in Howard County which for years it has been attempting to have rezoned for combined intense residential and commercial uses. It was successful below but lost on appeal in *Board v. Turf Valley,* 247 Md. 556. On its second effort, Judge Macgill found in November 1970 that the zoning authorities of Howard County had acted arbitrarily and illegally in denying a change in the classification of its land to Planned Community zoning (at the argument we were told that a Planned Community District would be the equivalent of a mini-City of Columbia). We say "would be" because on March 9, 1971 the Zoning Board of Howard County deleted from the County's comprehensive zoning ordinance Sec. 17A, the section that provided for planned communities. The present appeal by Turf Valley

is from an order of Judge Childs sitting in the Circuit Court for Howard County, holding the deletion to have been legally and effectively accomplished. Meanwhile, Howard County had appealed from Judge Macgill's order in Turf Valley's second effort. We heard argument in the second case on May 5, 1971, and, being then told by counsel that the present appeal was on its way to us, and that if we affirmed Judge Childs the appeal from Judge Macgill would become moot (see *Mandel v. Board of County Commissioners*, 238 Md. 208), it was agreed that we would defer decision until the present appeal was decided. We have concluded that Judge Childs' decision must be affirmed, and we will dismiss the appeal from Judge Macgill as moot.

The agreed statement of facts shows the following. On July 9, 1968 the County Commissioners of Howard County added Sec. 17A—Planned Community (P.C.) Districts—to the County's comprehensive zoning ordinance. Turf Valley is the first and the only applicant for reclassification of land to the new district. In the general election of 1968 the voters of Howard County adopted the charter form of government. On January 22, 1969 the first County Executive and the first members of the County Council were elected, taking office six days later.

Before Howard County became chartered, the power of the County Commissioners to zone was derived not from the basic state zoning enabling act codified as Code (1970 Repl. Vol.), Art. 66B, but from the special delegation granted by Ch. 19 of the Laws of the Extraordinary Session of 1948. Section 1109 of the County Charter continued the existing comprehensive zoning ordinance of the County in full force and effect. The adoption of the Charter made the Express Powers Act, Code (1966 Repl. Vol.), Art. 25A, § 5 (X) the basis of the County's power to zone. That section reads:

"The following enumerated express powers are hereby granted to and conferred upon any

county * * * which shall hereafter form a charter under the provisions of said Article 11A of the Constitution * * * [t]o enact local laws, for the protection and promotion of public safety, health, morals, and welfare, relating to zoning and planning."

The Howard County Charter in Art. II establishes the County Council as the legislative branch of the County government. Section 202 says: "The legislative power of the County is vested in the County Council of Howard County which shall consist of five members who shall be elected from the County at large." Section 204 provides that: "In all of its functions and deliberations, the Council shall act as a body and shall have no power to create standing committees or to delegate any of its functions and duties to a smaller number of its members than the whole." The depth and extent of the law making power is spelled out in Sec. 207: "The Council is vested with the law making power of the County, including all such powers as heretofore have been exercised by the General Assembly of Maryland and transferred to the people of the County by the adoption of this Charter."

One of the first legislative acts of the Council was to pass Council Bill No. 3, 1969 (Bill 3). Bill 3 repealed certain existing zoning procedural provisions, and went on:

"to provide for a legislative agency of the County Council consisting of the members of the County Council to be the Zoning authority of Howard County, to provide for the designation, establishment, adoption, modification, supplementation, enforcement, and repeal of zoning districts, boundaries, and regulations, to provide for the procedure of designation, establishment, adoption, amendment, modification, supplementation and repeal thereof, and to provide further for appeals from decisions of the Zoning Board, and, further declaring this Act to be an emergency measure."

Section 16.200 of Bill 3 provides that the Howard County Zoning Board which the Bill creates shall be the zoning authority of the County and names the act the "Zoning Enabling Act of Howard County." Section 16.201 states that the intention of the County Council is "to establish a legislative agency of the County Council" as the County's zoning authority, and makes the five members of the County Council the five members of the Zoning Board and the chairman and the vice-chairman and the secretary of the Council the chairman, the vice-chairman and the secretary, respectively, of the Board.

Section 16.202 of the Zoning Enabling Act provides: "For the purpose of promoting the health, safety, morals and general welfare of Howard County" the Zoning Board is empowered to regulate size and location and use of buildings, open spaces and density of population (the words are those generally used in § 4.01 (a) of Art. 66B of the Code (1970 Repl. Vol.) and in § 21 (a) of Art. 66B before it was superseded by Sec. 4.01 (a) in 1970). Section 16.203 authorizes the Zoning Board to divide the County into districts and make regulations uniform in each district and provides that such district boundaries and regulations shall be made "in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets [etc.]." There follow other standard designs, the precise words being those generally used in zoning enabling acts, as for example in § 4.03 of Art. 66B of the Code (1970 Repl. Vol.) and in § 21 of Art. 66B of the Code (1957). Section 16.204 provides that: "Zoning regulations, districts, boundaries and restrictions may from time to time be amended, supplemented, changed, or repealed by the Zoning Board" after notice and hearing in manner specified and after receiving and considering the report of the Planning Board before final decision. Section 16.206 requires that: "All public hearings on zoning matters shall be conducted in accordance with the rules of procedure adopted by the Zoning Board insofar as they do not con-

flict with the rules of administrative procedure promulgated by law." Section 16.207 provides for judicial review, granting any aggrieved person or officer, department, board or bureau of the County or State an appeal to the Circuit Court "in accordance with the Maryland Rules of Procedure providing for appeals from administrative agencies." The court, without a jury, may affirm, remand or reverse or modify the decision if the substantial rights of the appellant have been prejudiced because the Board's findings or decisions violate constitution or charter, or statute, were made upon unlawful procedure, were fraudulent, grossly erroneous to the point of bad faith, arbitrary or illegal or "unsupported by competent, material and substantial evidence in view of the entire record as submitted." [1]

During the political campaign of 1970 in Howard County most of the twelve candidates for the County Council promised to support an amendment to the County's comprehensive zoning ordinance that would delete the Planned Community District from the ordinance and the sole candidate favoring retention of the P.C. classification was not elected. Councilman Charles E. Miller, who was campaigning for reelection, petitioned the Zoning Board (pursuant to Sec. 16.205 of the Zoning Enabling Act which permits "any duly * * * elected * * * County * * * official [to] petition the Zoning Board for an amendment, supplement, addition, repeal, or a change to the zoning regulations * * *") to eliminate the Planned Community districts before the election but the Board refused to act. After Mr. Miller was reelected he insisted on action on his petition. Due notice was

---

1. The County Council adopted by Council Bill No. 7, 1970, an Administrative Procedure Act for the County which in terms is made applicable to the Zoning Board. Like the Zoning Enabling Act, the Administrative Procedure Act lays down careful rules to insure fairness and due process in zoning matters. Two methods of judicial review are provided. Section 22.202 (e) of the Administrative Procedure Act grants a broad right to petition for a declaratory judgment to review a rule or regulation of any agency of the County in addition to the right of appeal to the Circuit Court in zoning matters granted in Sec. 16.207.

given of a hearing that began on January 26, 1971, and was continued to February 10. The Zoning Board heard testimony and received other evidence, considered the report of the Planning Board (which recommended denial of the petition but suggested refinements and improvements in the regulations relating to Planned Communities) and on March 9 deleted from the comprehensive zoning ordinance Sec. 17A (P.C.), the Planned Community provisions.

Turf Valley appeared before the Zoning Board in opposition to Councilman Miller's petition. It objected first on the ground that the zoning regulations as they existed prior to the passage of Bill 3 permitted only the County Commissioners to amend regulations (and presumably that after the Charter took effect only the County Council could legislate as to zoning) and, second, to the participation in the proceedings of Councilmen Miller and Jones on the ground that they had demonstrated by their public and private statements that they would vote to delete Sec. 17A come what may. Both councilmen refused to withdraw and both voted.[2]

Turf Valley took an appeal to the Circuit Court. It alleged that the decision to delete Sec. 17A was illegal, unconstitutional and void for all of the reasons that the appeal section of the Zoning Enabling Act (Sec. 12.607) authorizes the Circuit Court to reverse or modify a decision of the Zoning Board. It alleged further that the action of the Zoning Board was tainted fatally by the participation therein of Councilman Miller and of other councilmen who in what amounted to a sham hearing recorded for the record the vote they had announced before the hearing began.

Turf Valley makes two contentions here. First, it says, the County Council did not legally and effectively delegate all zoning powers to the Zoning Board as it pur-

---

2. Mr. Miller, when the vote was 4 to 1 to delete, offered to withdraw but when Mr. Hanna, who had voted aye, said he would change his vote if Mr. Miller did so, thereby producing a deadlocked vote, Mr. Miller continued to vote aye.

ported to do. Essentially, this argument is that even if it be assumed that a right to so delegate could constitutionally and legally have been bestowed on the Council, the Howard County Charter did not bestow it, and, in any event, the Council by passing the Administrative Procedure Act made the Zoning Board an administrative agency, and legislative powers cannot be delegated to an administrative agency. Second, it argues that the bias and prejudice of Messrs. Miller and Jones against Turf Valley made void the action of the Zoning Board.

We think there is no fundamental barrier to conferring on the legislative branch of a chartered county the right to constitute itself a zoning body and that the Howard County Charter permitted the Council of that County to act as it did in this regard. There is no present need to go beyond this holding.

The governmental processes of zoning early were recognized as best exercised locally and the legislature permitted such exercise by adding Art. 66B to the Code by the passage of Ch. 705 of the Laws of 1927, the first basic zoning enabling act, which granted zoning powers to cities and incorporated towns of more than 10,000 inhabitants and Ch. 599 of the Laws of 1933, which generally provided the zoning power for counties and all incorporated areas. The validity of this delegation cannot now successfully be challenged if ever it could have been. *Bradshaw v. Lankford,* 73 Md. 428, 430; *Rossberg v. State,* 111 Md. 394, 412-415; *Gordon v. Montgomery County,* 164 Md. 210, 213; *Carney v. City of Baltimore,* 201 Md. 130, 135. Article XI-A of the Constitution, § 3 provides that upon adoption of a charter the County Council of a County has, subject to the Constitution and Public General Laws of the State, "full power to enact local laws of said * * * County including the power to repeal or amend local laws * * * upon all matters covered by the express powers granted [pursuant to § 2]." Section 2 directs the General Assembly to provide a grant of express powers for chartered counties. The General

Assembly complied by the passage of Art. 25A of the Code and § 5 (X) of Art. 25A gives the chartered county power to enact local laws "relating to zoning and planning."

Section 4 of Art. XI-A of the Constitution provides that after adoption of a charter "no public local laws shall be enacted by the General Assembly for said * * * County on any subject covered by the express powers granted as above provided." Thus there is presently an exclusive constitutional grant to Howard County to legislate locally in relation to all zoning matters in the County. It has all the powers in this regard in Howard County that the State had inherently and would continue to have except for Art. XI-A. *Carney v. City of Baltimore, supra,* and *Givner v. Commissioner of Health,* 207 Md. 184, 189. As we see it, Howard County without violation of constitutional or statutory bounds enacted for itself a local Art. 66B by passing Bill 3.

The cases in this Court sustain these views. In *Givner v. Commissioner of Health, supra,* we pointed out that the City of Baltimore had been given within its limits the rights to exercise the same full police power the State possesses, and that the only question was whether the ordinance had validly delegated part of that power to the Commissioner of Health. The delegation was to make regulations "for the better protection of the health of the City." In upholding the Commissioner's regulations, we said (p. 191) :

> "The fact that the promulgation of regulations involves the exercise of discretion and deliberation of a type that might be described as legislative in character, is not necessarily fatal, provided there are adequate standards set up to guide the Commissioner of Health in ascertaining the basic facts upon which his regulations are predicated."

The process of zoning is described in *Hyson v. Mont-*

*gomery County,* 242 Md. 55, 63-66, as in part legislative in character. In *Pressman v. Barnes,* 209 Md. 544, we upheld a delegation to the Director of Traffic of Baltimore to set speed limits on city streets. In *Baltimore County v. Mo. Realty,* 219 Md. 155, we dealt with the argument that the Board of Zoning Appeals could not validly rezone piecemeal because reclassification was the exercise of legislative powers that could not be delegated to an administrative agency. In rejecting the contention, we said (p. 161) :

> "It has long been established in Maryland that the mere fact that the power is legislative does not prevent its delegation. See *M. & C. C. of Balto. v. Biermann,* 187 Md. 514, 522, and *Marino v. City of Baltimore,* 215 Md. 206, 215. There are cases to the contrary in other states. See Note 58 A.L.R.2d 1083. It is argued that where there is no legislative policy laid down in advance, as in the case of special exception or variances, the rule is otherwise. But we said in the *Missouri Realty, Inc. v. Ramer* case, *supra,* [216 Md. 442] (p. 447) : 'Zoning officials, when properly authorized, have the authority to alter zone lines from time to time when there are substantial changes in conditions and such alteration has a reasonable relation to the public welfare,' quoting *Offutt v. Bd. of Zoning Appeals,* 204 Md. 551, 557."

We went on to say (at p. 162) :

> "As Judge Markell, for the Court, said in *Pressman v. D'Alesandro,* 193 Md. 672, 678, the basic question 'is not whether the City Council can delegate legislative power, but whether the Legislature has conferred, by the Baltimore charter or otherwise, power—of whatever nature, legislative or executive or both—to make the choice of alternatives. There can be no ques-

tion as to the power of the Legislature to make such grants of powers of local government, whether to an existing municipal corporation or agency, a specially constituted body, or an existing executive or administrative body such as county commissioners. The constitutional requirement of separation of powers is not applicable to local government. [Citing cases— and add *Wicomico County v. Todd,* 256 Md. 459]. Just how much power is granted by a particular statute is a question of statutory construction, * * * not a constitutional question.' * * * In the instant case the power stems directly from the statute and Charter, and there was no redelegation by the County Council to the Board. We do not suggest that a different result would follow if there had been a redelegation authorized by basic law."

We added (p. 163):

"There is the further safeguard that, to the extent that the action taken may be arbitrary, capricious, discriminatory or illegal, or not fairly debatable, any action taken is subject to judicial review."

In the delegation under review there are clear and defined standards, for Bill 3 restates for the guidance and control of the Zoning Board the well established and recognizedly valid standards of the basic State zoning enabling law, and adds the protection of judicial review.

The provisions of the Howard County charter impose no substantial or significant barrier to the delegation made by Bill 3. The argument of Turf Valley is that zoning is law making and under the charter only the County Council can make law. The power given the Council, the legislature of the County under the charter, by the express powers act is to pass local laws "in re-

lation to planning and zoning." Bill 3 unquestionably is a local law relating to zoning. Section 207 of the charter says the law making power of the Council includes "all such powers as heretofore have been exercised by the General Assembly of Maryland and transferred to the people of the County by the adoption of this Charter." The General Assembly had, and exercised, the power to enact a zoning enabling act and that power was transferred to the Council by the Constitution and the express powers act when the Charter was adopted. The Council added to its legislative hat another piece of headgear when it made for itself a zoning board hat by the passage of Bill 3. The fact that the members and officers of the Zoning Board are identical with those of the Council gratifies the mandate of Sec. 204 of the Charter that the Council shall act as a body and not delegate any of its functions and duties to a smaller number of its members than a whole. That the Council required the Board to adjudicate facts and made it subject to Bill 7, the Administrative Procedure Act, as well as the fact that the appeal provisions in Bill 3 say the appeal to the Circuit Court is equated with appeals from administrative agencies, does not prevent the effective delegation to it of powers legislative in nature. Section 16.201 of Bill 3 states the intention of the Council to have been "to establish a legislative agency * * * which shall be the zoning authority of Howard County." The Council did not absolutely abrogate its powers in relation to zoning. It can abolish the Board at any time and itself zone and rezone. In the meantime it empowered the Board to amend, supplement, change or repeal "zoning regulations, districts, boundaries and restrictions." The pattern followed by the Council was that drawn by the legislature of Maryland in making the members of the County Council in the chartered counties of Montgomery and Prince George's the members of the District Councils in those counties with the power to zone and rezone, comprehensively and piecemeal, subject both to procedural standards and requirements usually associated with admin-

istrative agencies and judicial review. *Woodlawn Area Citizens Association, Inc. v. Board of County Commissioners of Prince George's County,* 241 Md. 187, 190-193. The zoning processes include the quasi-judicial function and the function legislative in character. *Hyson v. Montgomery County, supra.*

We are not impressed with the contention that the openly expressed interest of Messrs. Miller and Jones in deleting, and intention to delete, planned communities from the Howard County scene were such that they were disqualified from voting as Board members and therefore the fact that they did vote nullified the deletion action. There is no showing that these gentlemen had any element of personal gain or pecuniary interest in the deletion, or any bias against Turf Valley other than it would bring a planned community into being if it could unless Section 17A was cut from the law. They simply had come to the conclusion that planned communities would not be good for Howard County and openly campaigned for office on the loudly and frequently proclaimed promise that if elected they would vote to eliminate the possibility of any such communities. The voters responded by electing them and they kept their promises.

Professor Davis well articulates the views we have on this phase of the matter. In his *Administrative Law Treatise,* he says in Sec. 12.01:

> "Bias in the sense of crystallized point of view about issues of law or policy is almost universally deemed no ground for disqualification." (p. 131)
> "All men who had thought about controversial issues necessarily have biases in this sense. A judge may have a bias on a question of law because he has decided the question in a previous judicial opinion; the judge who has the most biases in this sense may be the best judge." (pp. 130-131)

See also Sec. 12.06 as follows:

"Prejudgment of adjudicative facts is not necessarily a ground for disqualification. The holdings are almost uniform that a judge who has announced his findings of fact is not disqualified to hear the case a second time after a remand, and these holdings are generally applied equally to the administrative adjudicator. Prejudgment of facts bearing on law or policy is no more a disqualification than prejudgment of philosophy about law or policy." (p. 169)

See also *Kramer v. Bd. of Adjust., Sea Girt* (N. J.), 212 A. 2d 153, 159-161 ("[N]evertheless, the interest which disqualifies a member of the governing body in such a situation is a personal or private one, and not such an interest as he has in common with all other citizens or owners of property * * *. True, from his so called 'realistic attitude toward the Stockton Hotel' a reasonable mind might be left with little doubt as to where the Mayor's sentiments lay; but it is equally true that the campaign literature, the statements to the press, and all other official statements represent no more than the views of public officials pertaining to a matter of deep moment to the community.").

Judge Childs held below that the deletion action was legislative in nature and that the philosophical bias and predisposition and political promises of Messrs. Miller and Jones did not disqualify them from sitting and voting, citing *M. & C. C. of Balto. v. Biermann,* 187 Md. 514, *Benner v. Tribbitt,* 190 Md. 6, and *Blankenship v. City of Richmond* (Va.), 49 S.E.2d 321. We agree. Certainly if the Council had done away with the Zoning Board and under its Council hat had deleted planned communities, Messrs. Miller and Jones could have voted. That they voted under the Board hat did not put the curse on their actions.

Finding that the Board's action was not in violation

of constitutional or charter provisions, beyond the statutory jurisdiction of the Board, made upon unlawful procedure, or fraudulent, Judge Childs held further that to establish the disqualification of Messrs. Miller and Jones and the invalidity of the Board's action Turf Valley would have to show him by the transcript of the Board hearing (which had not yet been typed) bad faith, complete lack of supporting evidence, arbitrariness or other error, or other lack of due process under the standards of judicial review set up by Bill 3. Turf Valley chose not to have the transcript prepared, bringing this appeal instead. Assuming that Turf Valley did not thereby waive its right to continue to press such disqualifying grounds, we have found nothing in the record, the briefs or the oral argument as to the motives or the conduct of Messrs. Miller and Jones that goes beyond sincere political and philosophical views that they were able to put into effect by reason of the electorate's agreement with those views.

*Order affirmed, with costs.*