677 A.2d 567

MARYLAND RECLAMATION ASSOCIATES, INC.

v.

HARFORD COUNTY, Maryland, et al.

No. 48, Sept. Term, 1994.

Court of Appeals of Maryland.

June 7, 1996.

478 

John R. Greiber, Jr. (James P. Nolan; Council, Baradel, Kosmerl & Nolan, P.A., on brief), Annapolis, (William D. Hooper, Jr.; Jacobs & Belvins, P.A., on brief), Bel Air, for Appellant.

Jefferson L. Blomquist (Ernest A. Crofoot, on brief), Bel Air, for Appellees.

Patricia K. Nimmerrichter, Upper Marlboro, for Intervenors.

Richard Boldt, Assoc. Professor of Law, Sherrilyn A. Ifill, Asst. Professor of Law, University of Md. School of Law, Baltimore, for Amicus Curiae, Concerned Citizens of Eastern Harford County.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

ELDRIDGE, Judge.

This case presents several challenges to the validity, as applied to the plaintiff-appellant's property, of two Harford County land-use ordinances relating to rubble landfills.

## I.

In August 1989, the plaintiff-appellant, Maryland Reclamation Associates, Inc., contracted to purchase property located adjacent to Gravel Hill Road in Harford County, Maryland. Maryland Reclamation intended to construct and operate a rubble landfill on this property; thus, it began the process of obtaining a rubble landfill permit from the Maryland Department of the Environment pursuant to Maryland Code (1982, 1996 Repl. Vol), §§ 9–204 through 9–210, §§ 9–501 through 9–521 of the Environment Article, and COMAR 26.03 through 26.04.

Maryland Reclamation first requested that Harford County include the Gravel Hill Road property in Harford County's Solid Waste Management Plan as a rubble landfill. Thereafter, Harford County amended its Solid Waste Management Plan to include Maryland Reclamation's Gravel Hill Road site as a rubble landfill. The property's inclusion in the Harford County Solid Waste Management Plan, however, was made subject to twenty-seven conditions, including a minimum landscape buffer of 200 feet. On November 16, 1989, Harford County advised the Maryland Department of the Environment that Maryland Reclamation's Gravel Hill Road property had been included in the County's Solid Waste Management Plan as a rubble landfill site.

Maryland Reclamation next sought approval at the state government level from the Department of the Environment. On November 20, 1989, Maryland Reclamation received Phase I permit approval from the Department of the Environment.

Maryland Reclamation then filed with the Department the necessary reports and studies for Phase II and Phase III approvals.

As previously mentioned, Maryland Reclamation had entered into a contract to purchase the property located adjacent to Gravel Hill Road in August 1989, before its inclusion in Harford County's Solid Waste Management Plan. Allegedly relying on the property's inclusion in Harford County's Solid Waste Management Plan and on the Department of the Environment's Phase I approval, Maryland Reclamation consummated the purchase of the Gravel Hill Road property on February 9, 1990, for $732,500. The settlement occurred on the last possible day under the terms of the contract of sale.

Four days after the settlement date, newly appointed Harford County Council President Jeffrey D. Wilson and Council Member Joanne Parrott introduced in the County Council Resolution 4–90, which provided for the removal of Maryland Reclamation's property from the County's Solid Waste Management Plan.[1] In the litigation that ensued over this resolution, the Court of Special Appeals held that Resolution 4–90 was invalid because it was preempted by the State's authority over solid waste management plans and the issuance of rubble landfill permits. *Holmes v. MRA,* 90 Md.App. 120, 600 A.2d 864, *cert. dismissed sub nom. County Council v. Md. Reclamation,* 328 Md. 229, 614 A.2d 78 (1992).[2]

---

**1.** Between the time that Maryland Reclamation entered into its contract to purchase the Gravel Hill Road property in August 1989 and the time it closed on that property in February 1990, the membership of the Harford County Council had changed somewhat. Subsequently, the membership changed even more because of the November 1990 general election. As a result of this election, most of the former council members were replaced by newly elected members who had campaigned in opposition to the Gravel Hill Road rubblefill.

**2.** This Court's dismissal was based on the lack of standing by the Harford County Council, acting alone, to seek further appellate review in this Court. No other party had sought certiorari review in this Court. The corporate entity Harford County, consisting of the County Executive and County Council together, was a party in the case but had decided not to seek appellate review. Moreover, the appropriate gov-

While the litigation over Resolution 4–90 was pending, Bill 91–10 was introduced in the Harford County Council, on February 12, 1991, as an emergency bill. Bill 91–10 proposed to amend the requirements for a rubble landfill by increasing the minimum acreage requirements, buffer requirements, and height requirements. The bill, *inter alia,* would establish a minimum rubble fill size of 100 acres and a buffer zone of 1000 feet. After public hearings, the County Council passed the bill on March 19, 1991, and the County Executive signed the bill into law on March 27, 1991.[3] The ordinance became effective immediately, and it is codified as § 267–40.1 of the Harford County Code.

On April 2, 1991, Bill 91–16 was introduced in the Harford County Council. This bill would authorize the County Council to remove a specific site from the County's Solid Waste Management Plan if the site does not comply with certain zoning ordinances, if a permit has not been issued by the State Department of the Environment within eighteen months of the site being placed in the County's Solid Waste Management Plan, or if the owner of the site has not placed the site in operation within the same eighteen month period. Bill 91–16 was passed by the County Council, signed into law by the

---

ernmental entity under state law with regard to the County's solid waste management plan was the "governing body" of the County, which consisted of the County Executive and County Council together. *See, County Council v. Md. Reclamation,* 328 Md. 229, 234–236, 614 A.2d 78, 81–82 (1992). While our dismissal of certiorari had the effect of leaving the opinion and judgment of the Court of Special Appeals intact, we expressly stated that "our action should not be construed as approval of the intermediate appellate court's opinion and judgment." 328 Md. at 236, 614 A.2d at 82.

**3.** At the time it passed Bill 91–10, the County Council was aware that Maryland Reclamation's property was less than 100 acres in size and that it would not have a buffer of 1000 feet. In fact, as stated earlier, one of the conditions for the property's inclusion into the County's plan was that Maryland Reclamation establish a minimum buffer of only 200 feet. It is *Maryland Reclamation's* contention, *inter alia,* that the requirements of Bill 91–10 were specifically designed to prohibit use of Maryland Reclamation's property as a rubble landfill.

County Executive on June 10, 1991, and is codified as § 109–8.4 of the Harford County Code.[4]

The President of the Harford County Council, on April 25, 1991, sent a letter to the State Department of the Environment, enclosing a copy of enacted Bill 91–10, and advising the Department that the provisions of the bill could call into question the status of sites which were in the process of obtaining rubble landfill permits. On May 2, 1991, the Department of the Environment advised the County Council that if a permit were to be issued to Maryland Reclamation, such issuance would not authorize Maryland Reclamation to violate any local zoning or land-use requirements.

Also on May 2, 1991, the County's Director of Planning sent a letter to Maryland Reclamation informing it of Bill 91–10, indicating that Maryland Reclamation's property would apparently fail to meet the requirements of Bill 91–10, stating that Maryland Reclamation should submit documentation

---

4. Section 109–8.4 of the Harford County Code states as follows:
 " § 109–8.4. Removal from plan. [Added by Bill No. 91–16]
 "The County Council may remove a site from the Solid Waste Management Plan if the owner or operator:
 "A. Is in violation of any provision of § 109–8.1, 109–8.2, or 109–8.3 of this Article; or
 "B. Has not, within 18 months after the date on which the Council placed the site in the plan:
 (1) Been issued a permit by the Maryland Department of the Environment; or
 (2) Placed the site in operation as a rubble landfill."
 The section seems to authorize the County Council alone to remove a site from the Solid Waste Management Plan. Nevertheless, as this Court held in *County Council v. Md. Reclamation, supra,* 328 Md. at 235–236, 614 A.2d at 82, the provisions of state law "do not authorize [a] County Council itself to ... amend [a] County's Solid Waste Management Plan," and such amendments must be done by the county council and county executive acting together. Moreover, Maryland Code (1982, 1996 Repl.Vol.), §§ 9–503 and 9–507 of the Environment Article, require that amendments to solid waste management plans be submitted to the State Department of the Environment for the Department's approval or disapproval. In the present case, however, the validity of § 109–8.4 was not challenged on these grounds in either the circuit court or in this Court. Consequently, the issues are not before us at this time.

showing that the Gravel Hill Road site could meet the requirements of the zoning ordinances, and stating that, if the site could not meet such requirements, Maryland Reclamation would need a variance to operate a rubble landfill on the property. Maryland Reclamation did not submit any documents pursuant to the May 2, 1991, letter and did not file an application for a variance.[5] Maryland Reclamation did file on May 21, 1991, an "appeal" to the Harford County Board of Appeals from the "administrative decision pursuant to Section 267–7 E in a letter dated 5/2/91," requesting that the Board "review and reverse the decision of the Zoning Administrator interpreting that the standards of Council Bill 91–10 apply to the Applicant." The "application" to the Board of Appeals asserted that Bill 91–10 was inapplicable to the property and that, if it was applicable, it was invalid.[6]

---

5. Under § 267–11 of the Harford County Code, a variance may be granted if, because "of the uniqueness of the property or topographical conditions," the "literal enforcement" of the zoning regulations "would result in practical difficulty or unreasonable hardship," and the variance would not be "substantially detrimental to adjacent properties" or would not "materially impair the purpose" of the zoning regulations "or the public interest."

 Section 267–9 D of the Harford County Code provides that "[a]pplications for variances . . . shall be filed with the Zoning Administrator by the property owner" and that "[a]ppeals from the decision of the Zoning Administrator" may be taken to the Board of Appeals.

 Under the Harford County Charter and Code, the members of the County Council also serve as the members of the Board of Appeals, and the Director of Planning is also the Zoning Administrator. The May 2, 1991, letter to Maryland Reclamation purported to be signed by the Director of Planning/Zoning Administrator in his capacity as "Director of Planning."

6. Section 267–7 B(5) of the Harford County Code does authorize the Zoning Administrator to "[r]ender interpretations upon written request of an interested person whose property may be affected as to the applicability of [the zoning regulations] to particular uses and [their] application to the factual circumstances presented." Subsection B(5) goes on to set forth procedural requirements in connection with a request for an interpretation and the Administrator's issuance of an interpretation. Section 267–7 E of the Code provides that "[a]ny decision of the Zoning Administrator shall be in writing and shall be subject to appeal to the Board [of Appeals] by any aggrieved person within twenty (20) days of the date of decision."

On May 14, 1991, Resolution 15–91 was introduced in the Harford County Council. This resolution purported to interpret Harford County law and determine that the Gravel Hill Road site was not in compliance with county law; the resolution went on to remove the site from the County's Solid Waste Management Plan. The County Council passed Resolution 15–91 on June 11, 1991. The resolution was apparently not submitted to the County Executive for his approval.

Maryland Reclamation on June 20, 1991, filed a complaint in the Circuit Court for Harford County, seeking a Declaratory Judgment and Injunctive Relief against Harford County and the Harford "County Council." Maryland Reclamation requested, *inter alia*, the following: (1) a declaration that Bills 91–10 and 91–16, as well as Resolution 15–91, are "null and void as to the Gravel Hill Site;" (2) an injunction preventing the County from enforcing Bills 91–10 and 91–16 and Resolution 15–91 against Maryland Reclamation; and (3) an injunction staying all further action on Maryland Reclamation's "appeal" to the Board of Appeals. Maryland Reclamation advanced numerous legal theories to support its complaint for declaratory and injunctive relief.

The circuit court on June 28, 1991, issued an interlocutory injunction preventing enforcement of Bills 91–10, 91–16, and Resolution 15–91 against Maryland Reclamation. The order expressly allowed the Department of the Environment to continue its processing of Maryland Reclamation's pending permit application. The order also stayed the processing of Maryland Reclamation's administrative "appeal" from the Director of Planning's "decision" contained in the Director's May 2, 1991, letter. Finally, the interlocutory order prohibited

---

In light of the procedural requirements set forth in § 267–7 B(5), the lack of any request by Maryland Reclamation, and the other circumstances of this case, the May 2, 1991, letter from the Director of Planning/Zoning Administrator was not an "interpretation" or "decision" within the contemplation of § 267–7 B(5), and was not appealable under § 267–7 E. *Cf. United Parcel v. People's Counsel,* 336 Md. 569, 581 n. 5, 650 A.2d 226, 232 n. 5 (1994) (that the advice and a note from the Zoning Commissioner "was an appealable 'decision' ... seems doubtful").

Maryland Reclamation from starting any construction without court approval.

On February 28, 1992, the State Department of the Environment issued to Maryland Reclamation a permit to operate a rubble landfill on its property. The Department expressly conditioned the permit upon Maryland Reclamation's compliance with all local land use requirements.[7]

Upon cross-motions for summary judgment, the circuit court on May 19, 1994, filed an opinion and judgment, declaring that Harford County was entitled to enact new zoning laws that may prevent Maryland Reclamation from operating a rubble landfill, and that Bills 91–10 and 91–16 were not invalid on the grounds asserted by the plaintiff. The court, however, declared that Resolution 15–91 was invalid on its face. According to the circuit court, the Harford County Council was acting as a legislative body when it passed the resolution, and the passage of the resolution constituted an illegal attempt to interpret and apply the laws which the Council had previously enacted.

Maryland Reclamation appealed to the Court of Special Appeals with respect to the circuit court's declaration that Bills 91–10 and 91–16 were not invalid. The County did not cross-appeal from the circuit court's declaration that Resolution 15–91 was invalid. Before any further proceedings in the intermediate appellate court, this Court issued a writ of certiorari.

## II.

Maryland Reclamation in this Court makes essentially four arguments. Two of them are grounded upon the due process

---

7. The permit contained the following language:

"Nothing in this permit authorizes the construction or operation of the facility in violation of zoning, planning or land use requirements nor does the issuance of this permit prevent Harford County from taking action to forbid the construction or operation of the facility to enforce applicable and valid zoning, planning and land use requirements."

clauses of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, and the other two are based entirely upon Maryland nonconstitutional law. Insofar as the due process arguments are based on the Fourteenth Amendment, Maryland Reclamation invokes the Civil Rights Act of 1871, 42 U.S.C. § 1983.[8]

The first and principal argument advanced by Maryland Reclamation is that it had a "constitutionally protectable property interest in the Harford County Solid Waste Management Plan" and had "vested rights in the permit process" (appellant's brief at 22, 25), and that Harford County had "retroactively" abrogated those rights in violation of due process principles (*id.* at 22–34, 42–48). Maryland Reclamation relies on several opinions by United States Courts of Appeal which have taken the position that, under some circumstances, a landowner may have a property right in a local government land-use permit, approval, or approval process, which is protected by the Due Process Clause of the Fourteenth Amendment, and which may be infringed by certain "arbitrary" or unlawful action by the local government. Maryland Reclamation relies heavily on two opinions by the United States Court of Appeals for the Fourth Circuit which have held, with regard to "due process challenges to municipal land-use decisions," that "a property-holder possesses a legitimate claim of entitlement to a permit or approval . . . [if] the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval." *Gardner v. Baltimore Mayor & City Council,* 969 F.2d 63, 68 (4th Cir.1992) (emphasis in original). *See also Scott v. Greenville County,* 716 F.2d 1409, 1418–1421 (4th Cir.1983).

---

**8.** Section 1983 provides in pertinent part as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The second constitutional argument made by Maryland Reclamation is that the two Harford County ordinances violate the landowner's "substantive due process" rights because the ordinances are "arbitrary and capricious" and "unreasonable . . . as applied to [this] particular factual situation" (appellant's brief at 34, 36). According to Maryland Reclamation, the ordinances are arbitrary, capricious, and unreasonable because the ordinances "targeted" Maryland Reclamation and had the "purpose" to "stop [Maryland Reclamation] from developing its property as [a] rubble fill" (*id.* at 38, 41).

Maryland Reclamation's two nonconstitutional arguments are (1) that this Court should recognize the doctrine of "zoning estoppel" and hold that Harford County is estopped from applying the ordinances to the Gravel Hill Road site, and (2) that the two Harford County ordinances, as applied to Maryland Reclamation's property, are preempted by the provisions of state law relating to solid waste disposal and the state permit issued to Maryland Reclamation.

During oral argument before this Court, Maryland Reclamation's contentions were clarified somewhat.

Both in the circuit court and in its brief in this Court, Maryland Reclamation relied upon principles and cases relating to the question of whether particular governmental regulation of a landowner's use of his property had gone so far as to constitute a "taking" of the property without just compensation in violation of the Fourteenth Amendment and the Just Compensation Clause of the Fifth Amendment and/or Article III, § 40, of the Constitution of Maryland.[9] In light of this

---

9. The Fifth Amendment to the Constitution of the United States provides in relevant part as follows:

"nor shall private property be taken for public use without just compensation."

Article III, § 40, of the Maryland Constitution states:

"**Section 40. Eminent domain.**

"The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

reliance, the Court inquired whether Maryland Reclamation's counsel was making a "takings" argument, and counsel stated that he was not. The following colloquy occurred:

"THE COURT: Mr. Grieber [Attorney for Maryland Reclamation], are you ... one thing I'm not sure about, are you making ... in addition to a substantive due process argument, are you making a takings argument under the [Just Compensation] Clause of the Fifth Amendment, or ...

MR. GRIEBER: No, I am not, Your Honor.

THE COURT: ... under Article III, section 40, of the Maryland Constitution?

MR. GRIEBER: No, I am not, Your Honor.

THE COURT: Okay.

MR. GRIEBER: That's, that's a viable option later should this Court not agree with me. But at this point in time, no, we are not."

In addition, counsel for Maryland Reclamation confirmed that Maryland Reclamation was "not making a facial attack" upon the ordinances but was "arguing that [they are] invalid as applied to" the Gravel Hill Road property. Counsel for Harford County then argued that questions of validity as applied should initially be raised and decided in the appropriate administrative proceedings, and that Maryland Reclamation had failed to invoke and exhaust the administrative remedies available to it. Maryland Reclamation's counsel responded that, because the same persons who are members of the County Council also are the members of the Board of Appeals in Harford County, it would be futile to invoke and exhaust administrative remedies.

---

The cases relied on by Maryland Reclamation included, *e.g., Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *Richmond Corp. v. Bd. of Co. Comm'rs,* 254 Md. 244, 253–257, 255 A.2d 398, 403–405 (1969); *Baltimore City v. Borinsky,* 239 Md. 611, 622–625, 212 A.2d 508, 511–514 (1965).

### III.

■ The threshold issue in this case is whether, and to what extent, Maryland Reclamation was required to invoke and exhaust administrative remedies available under the Harford County Code and the Express Powers Act, Maryland Code (1957, 1994 Repl.Vol.), Art. 25A, § 5(U) (setting forth the jurisdiction and procedural requirements with respect to boards of appeal in chartered counties). If, with regard to any particular issue raised by Maryland Reclamation in this Court, the landowner was required to invoke and exhaust administrative remedies before being entitled to a judicial resolution of the issue, and failed to do so, there would be no occasion for the Court to reach the merits of such issue. *See, e.g., Muhl v. Magan,* 313 Md. 462, 480–483, 545 A.2d 1321, 1330–1331 (1988); *Bd. of Ed. For Dorchester Co. v. Hubbard,* 305 Md. 774, 786–787, 506 A.2d 625, 631 (1986); *Maryland Comm'n On Human Rel. v. Mass Transit,* 294 Md. 225, 235, 449 A.2d 385, 390 (1982).[10]

There clearly were administrative remedies available to Maryland Reclamation, affording the landowner the means for obtaining the relief sought if it was entitled to such relief. As earlier noted, *supra* n. 6, § 267.7B(5) of the Harford County Code authorizes the Zoning Administrator to render decisions on the applicability of zoning regulations to particular property under the factual circumstances presented, and § 267–7E of the Code authorizes an appeal from his decision to the Board

---

**10.** It is true that Harford County did not cross-appeal from the declaratory judgment in this case on the ground that the circuit court should not have reached the merits of the issues raised because of a failure to exhaust administrative remedies. *See Joseph H. Munson Co. v. Sec. of State,* 294 Md. 160, 168, 448 A.2d 935, 939–940 (1982), *aff'd,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). Furthermore, Harford County did not raise the issue until oral argument in this Court, in response to Maryland Reclamation's express statement that it was not challenging the ordinances on their face. Nevertheless, as we have held on a number of occasions, "[t]he exhaustion or exclusivity of an administrative remedy is ... an issue" which "an appellate court ordinarily will address even though [it was] not raised by a party," *Moats v. City of Hagerstown,* 324 Md. 519, 525, 597 A.2d 972, 975 (1991), and cases there cited.

of Appeals. Maryland Reclamation could have sought a ruling by the Zoning Administrator under that section and could have prosecuted an appeal from any adverse ruling, but it failed to do so. Even if it be assumed, *arguendo*, that the May 2, 1991, letter from the Director of Planning was such a decision under § 267.7B(5), Maryland Reclamation failed to pursue its appeal to the Board of Appeals.

Moreover, if it was determined that Bill 91–10, or any other Harford County zoning regulation, precluded Maryland Reclamation from proceeding with a rubble landfill on its property, the landowner could have applied for a variance under §§ 267–9 D and 267–11 of the Harford County Code, and could have appealed any adverse decision to the Board of Appeals. Maryland Reclamation has never applied for a variance.

In addition to the provisions of the Harford County Code, state law vests jurisdiction in the Harford County Board of Appeals over "[a]n application for a zoning variance or exception...." Code (1957, 1994 Repl.Vol.), Art. 25A, § 5(U).[11] Furthermore, under Maryland law, the Harford County Board of Appeals would be authorized and required to consider any

---

11. Art. 25A, § 5(U), in relevant part vests the following appellate jurisdiction in a chartered county's board of appeals:

"An application for a zoning variance or exception or amendment of a zoning ordinance map; the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or of any adjudicatory order; and the assessment of any special benefit tax: Provided, that upon any decision by a county board of appeals it shall file an opinion which shall include a statement of the facts found and the grounds for its decision. Any person aggrieved by the decision of the board and a party to the proceeding before it may appeal to the circuit court for the county which shall have power to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse such decision, with or without remanding the case for rehearing as justice may require. Any party to the proceeding in the circuit court aggrieved by the decision of the said court may appeal from such decision to the Court of Special Appeals. The review proceedings provided by this subsection shall be exclusive."

See, e.g., *United Parcel v. People's Counsel, supra,* 336 Md. at 588–591, 650 A.2d at 236; *Hope v. Baltimore County,* 288 Md. 656, 421 A.2d 576 (1980); *Klein v. Colonial Pipeline Co.,* 285 Md. 76, 400 A.2d 768 (1979).

of the constitutional and other issues raised by Maryland Reclamation to the extent that those issues would be pertinent in the particular proceeding before the Board. *See Insurance Commissioner v. Equitable,* 339 Md. 596, 615–624, 664 A.2d 862, 872–876 (1995), and cases there reviewed. *See also Baltimore v. Seabolt,* 210 Md. 199, 207, 123 A.2d 207, 210 (1956) (zoning appeals board authorized to grant " 'exceptions' ... by holding the [zoning] ordinance *pro tanto* invalid"); *Hoffman v. City of Baltimore,* 197 Md. 294, 305–306, 79 A.2d 367, 372 (1951) (to the same effect). Under Art. 25 A, § 5(U), of the Maryland Code, decisions of the Harford County Board of Appeals are subject to judicial review in the Circuit Court for Harford County, with a further right of appeal to the Court of Special Appeals.

Consequently, it is clear that there were administrative remedies available to Maryland Reclamation, and that the landowner failed to invoke and exhaust those remedies. To reiterate, Maryland Reclamation did not pursue administratively the question of whether the new Harford County ordinances precluded the construction and operation of a rubble landfill on the Gravel Hill Road site. Maryland Reclamation never applied for a variance or exception. We shall now consider the consequences of this failure to exhaust administrative remedies.

■■■ With regard to Maryland Reclamation's due process arguments insofar as they are based upon the Fourteenth Amendment and 42 U.S.C. § 1983, it is appropriate for a court to consider those arguments regardless of the failure by Maryland Reclamation to invoke and exhaust administrative remedies. The Supreme Court has held that a plaintiff is entitled to maintain an action under 42 U.S.C. § 1983 in a state court without having exhausted available administrative remedies. *Felder v. Casey,* 487 U.S. 131, 146–147, 108 S.Ct. 2302, 2311, 101 L.Ed.2d 123, 143–144 (1988). State law requirements that administrative remedies first be exhausted are generally inapplicable to § 1983 actions. *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172

(1982); *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 12–14, 511 A.2d 1079, 1084–1085 (1986). Therefore, we shall address Maryland Reclamation's federal constitutional arguments in part IV of this opinion, *infra.*

 Maryland Reclamation's due process arguments based upon Article 24 of the Maryland Declaration of Rights, as well as its estoppel and preemption arguments, however, fall into an entirely different category. Maryland law recognizes no principle analogous to that set forth in *Felder v. Casey, supra,* 487 U.S. at 146–147, 108 S.Ct. at 2311, 101 L.Ed.2d at 143–144, and *Patsy v. Florida Board of Regents, supra.* Neither the enactments by the General Assembly nor the decisions of this Court dispense with the requirement that administrative remedies be exhausted in actions to enforce rights under the Maryland Constitution or rights under state statutes.

██ Where a legislature has provided an administrative remedy for a particular matter, even without specifying that the administrative remedy is primary or exclusive, this Court has "ordinarily construed the pertinent [legislative] enactments to require that the administrative remedy be first invoked and followed" before resort to the courts. *Bd. of Ed. for Dorchester Co. v. Hubbard, supra,* 305 Md. at 786, 506 A.2d at 631. *See, e.g., Board v. Secretary of Personnel,* 317 Md. 34, 42–43, 562 A.2d 700, 704 (1989); *Clinton v. Board of Education,* 315 Md. 666, 678, 556 A.2d 273, 279 (1989); *Muhl v. Magan, supra,* 313 Md. at 480–481, 545 A.2d at 1330–1331; *Quesenberry v. WSSC,* 311 Md. 417, 424, 535 A.2d 481, 484 (1988); *Comm'n on Human Rel. v. Mass Transit, supra,* 294 Md. at 230–232, 449 A.2d at 387–388, and cases there cited. When the legislative body expressly states that the administrative remedy is primary or exclusive or must be exhausted, the mandatory nature of the exhaustion requirement is underscored. Such express language "is totally inconsistent with the notion that the [administrative agency's] jurisdiction over [the matter] can be circumvented," *McCullough v. Wittner,* 314 Md. 602, 609, 552 A.2d 881, 884 (1989).

When a chartered county has established a board of appeals pursuant to the Express Powers Act, Code (1957, 1994 Repl. Vol.), Art. 25A, § 5(U), as Harford County has done, the General Assembly has specifically mandated in § 5(U) that the administrative remedy before the board of appeals, with judicial review of the board's decision, "shall be exclusive." This Court has consistently held that, where there exists a remedy before a chartered county's board of appeals under Art. 25A, § 5(U), "a party aggrieved . . . in that county must appeal to that county's board of appeals and may not [go] directly to the circuit court." *Hope v. Baltimore County,* 288 Md. 656, 657–658, 421 A.2d 576, 577 (1980) (invalidating a local ordinance which authorized an action in the circuit court without exhausting the remedy before the board of appeals). *See Klein v. Colonial Pipeline Co.,* 285 Md. 76, 83, 400 A.2d 768, 772 (1979) (holding that the Harford County Board of Appeals was established pursuant to Art. 25A, § 5(U), and that "a decision by the Board is a prerequisite to [resort] to the circuit court." The Court further held that a Harford County ordinance authorizing a party to by-pass the Board of Appeals "was ultra vires and in conflict [with] . . . § 5(U)"). *See also Agrarian, Inc. v. Zoning Inspector,* 262 Md. 329, 277 A.2d 591 (1971).

This Court has recognized a limited "constitutional" exception to the rule requiring exhaustion of administrative remedies. Under certain circumstances, "[w]here the constitutionality of a statute on its face is challenged, and where there exists a recognized declaratory judgment or equitable remedy, we have held that the challenger ordinarily need not invoke and exhaust his administrative remedy." *Insurance Commissioner v. Equitable, supra,* 339 Md. at 621, 664 A.2d at 875. *See Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 308–309, 407 A.2d 738, 741 (1979). To what extent this exception is applicable to a chartered county's board of appeals having jurisdiction over a land-use matter under Art. 25A, § 5(U), may not be clear in light of the express exclusivity language of § 5(U) and our cases applying that section. We need not, however, explore that issue in the present case.

■ As conceded by counsel for Maryland Reclamation, there is in this case no challenge to the validity of the two Harford County ordinances on their face. All four of Maryland Reclamation's arguments relate to the validity of the ordinances as applied to the Gravel Hill Road property. The arguments are particularly dependent upon the circumstances relating to Maryland Reclamation's property. Therefore, the so-called "constitutional exception" has no application to this case. Issues concerning the validity of ordinances as applied to particular property must be raised and initially decided in the administrative proceeding. *Insurance Commissioner v. Equitable, supra,* 339 Md. at 617–624, 664 A.2d at 873–876, and cases there discussed. We have held on numerous occasions that property owners are not entitled to maintain declaratory judgment actions or actions for injunctions concerning the validity of land-use ordinances as applied to their property, and that the validity of the ordinances must be litigated in the statutorily prescribed administrative and judicial review proceedings. *See, e.g., Arnold v. Prince George's Co.,* 270 Md. 285, 297, 311 A.2d 223, 229 (1973); *Hartman v. Prince George's Co.,* 264 Md. 320, 323–325, 286 A.2d 88, 89–90 (1972); *Gingell v. County Commissioners,* 249 Md. 374, 376, 239 A.2d 903, 904 (1968); *Poe v. Baltimore City,* 241 Md. 303, 216 A.2d 707 (1966); *Baltimore v. Seabolt, supra,* 210 Md. at 203, 123 A.2d at 208. *See also Arundel Corp. v. County Comm'rs,* 323 Md. 504, 512–513, 594 A.2d 95, 99 (1991).

Maryland Reclamation contends that exhaustion of its administrative remedy before the Harford County Board of Appeals would be futile because the members of the County Council, who have been opposed to a rubble landfill at the Gravel Hill Road site on policy grounds, also constitute the Board of Appeals. This argument, however, furnishes no sound basis for a judicially created exception to the exhaustion requirement set forth in Art. 25A, § 5(U). This Court in *Turf Valley v. Zoning Board,* 262 Md. 632, 639, 643–644, 278 A.2d 574, 577–580 (1971), held that "there is no fundamental barrier to conferring on the legislative branch of a chartered county the right to constitute itself a zoning body," and to delegate to

that zoning body both quasi-legislative and quasi-judicial zoning functions. The Court went on to hold in *Turf Valley* that legislative policy positions which had been taken and expressed by certain members of the Howard County Council "did not disqualify them from sitting and voting" as members of the Zoning Board, and did not require that the Zoning Board's decisions be overturned upon judicial review, 262 Md. at 644–646, 278 A.2d at 580–581.

Moreover, in *Klein v. Colonial Pipeline Co., supra,* 285 Md. at 82–83, 400 A.2d at 771–772, this Court held that constituting the Harford County Council as the Harford County Board of Appeals was valid, that the Harford County Board of Appeals was a board of appeals pursuant to Art. 25A, § 5(U), and that "[t]he language of § 5(U) expressly provides that a decision by the [Harford County] Board [of Appeals] is a prerequisite to an [action in] the circuit court...." It would largely undermine the teachings of the *Klein* case for us to hold, as urged by Maryland Reclamation, that the Harford County Board of Appeals can be by-passed whenever a case involves Harford County ordinances reflecting a policy which is arguably inconsistent with the plaintiff's position, simply because the members of the County Council also constitute the Board of Appeals.

■ As indicated by this Court in *Turf Valley v. Zoning Board, supra,* 262 Md. at 644–645, 278 A.2d at 580–581, the fact that a member of an adjudicatory body had previously taken a position on a matter does not mean that he or she is incapable of fairly judging the matter. Otherwise, " 'a judge [would be] ... disqualified to hear a case a second time after a remand,' " *Turf Valley,* 262 Md. at 645, 278 A.2d at 580, quoting 2 Davis, *Administrative Law Treatise,* § 12.06 (1958).

If Maryland Reclamation were to seek a decision or decisions by the Harford County Board of Appeals, the Board would be considering the issues raised by Maryland Reclamation in a quasi-judicial capacity, and its decision would be fully subject to judicial review in the Circuit Court for Harford County. If the Board of Appeals commits an error of law, if

its rulings are arbitrary or capricious, or if critical factual findings are unsupported by substantial evidence, the Board's decision will be reversed. Nevertheless, under Art. 25A, § 5(U), the Board's decision-making function cannot be circumvented.

The court below should not have considered on the merits Maryland Reclamation's challenges to the application of Bills 91–10 and 91–16 to the Gravel Hill Road property insofar as those challenges were based on Maryland law. To the extent that Maryland Reclamation's action regarding the applicability and validity of Bills 91–10 and 91–16 was not based upon claimed violations of the Fourteenth Amendment, it should have been dismissed for failure to exhaust administrative remedies.

## IV.

As set forth earlier, Maryland Reclamation's principal argument in this case, both in the circuit court and in this Court, is that the landowner had a "constitutionally protectable property interest in the Harford County Solid Waste Management Plan" and "vested rights in the permit process," and that Harford County, by enacting Bills 91–10 and 91–16, had deprived the landowner of those rights in violation of the Due Process Clause of the Fourteenth Amendment (appellant's brief at 22–34). Maryland Reclamation also argues that Bills 91–10 and 91–16 violate the Due Process Clause because the Gravel Hill Road property was the "target" of the legislation. Furthermore, Maryland Reclamation does not complain that it was denied any procedural rights, such as the right to a hearing. Instead, the landowner invokes so-called "substantive" due process principles, asserting that the two Harford County ordinances were "arbitrary and capricious" as applied to the Gravel Hill Road Property.

## A.

Maryland Reclamation relies upon selected opinions from a line of cases in the United States Courts of Appeal recogniz-

ing, under certain circumstances, property rights in local government land-use permits, approvals and approval processes, which are protected under procedural or "substantive" due process principles. *See, e.g., Biser v. Town of Bel Air,* 991 F.2d 100 (4th Cir.), *cert. denied,* 510 U.S. 864, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993); *Taylor Inv. Ltd. v. Upper Darby Tp.,* 983 F.2d 1285, 1290–1295 (3d Cir.), *cert. denied,* 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993); *Gardner v. Baltimore Mayor & City Council, supra,* 969 F.2d at 68–71; *Pearson v. City of Grand Blanc,* 961 F.2d 1211 (6th Cir.1992); *Nasierowski Bros. Inv. v. City of Sterling Heights,* 949 F.2d 890 (6th Cir.1991); *Brady v. Town of Colchester,* 863 F.2d 205, 212–216 (2d Cir.1988); *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58–59 (2d Cir.1985); *Scott v. Greenville County, supra,* 716 F.2d at 1418–1421; *United Land Corp. of America v. Clarke,* 613 F.2d 497, 501 (4th Cir.1980).[12] Maryland Reclamation particularly relies upon the Fourth Circuit's *Scott v. Greenville County* and *Gardner* opinions, the Sixth Circuit's *Nasierowski Bros.* opinion, and the opinion of the Second Circuit in *Brady v. Town of Colchester.*

■■■ Although there may be some differences among the federal appellate circuits in the approaches taken in these land-use cases involving allegations of a denial of due process, Maryland Reclamation's argument would fail under any of the

---

**12.** The line of 42 U.S.C. § 1983 cases recognizing property rights, protected by the Due Process Clause, in land-use permits, approvals, or approval processes, is not limited to the federal courts of appeal. Some state supreme court and state intermediate appellate court opinions have applied the principles set forth in those federal cases. *See, e.g., Sundheim v. Board of Cty. Com'rs of Douglas Cty.,* 904 P.2d 1337, 1345–1348 (Colo.App.1995); *Red Maple Properties v. Zoning Com'n,* 222 Conn. 730, 736–739, 610 A.2d 1238, 1241–1243 (1992); *Northpointe Plaza v. City of Rochester,* 465 N.W.2d 686, 689–690 (Minn.1991); *Boulder City v. Cinnamon Hills Assocs.,* 110 Nev. 238, 245–249, 871 P.2d 320, 324–326 (1994); *Waters v. Township of Galloway,* 286 N.J.Super. 222, 668 A.2d 1086, 1094–1095 (1995). *See also Security v. Baltimore County,* 104 Md.App. 234, 245–248, 655 A.2d 1326, 1331–1333, *cert. denied,* 339 Md. 643, 664 A.2d 886 (1995), *cert. denied,* — U.S. ——, 116 S.Ct. 917, 133 L.Ed.2d 847 (1996).

above-cited opinions.[13] Accepting, for purposes of this case only, the principles set forth in any one of these land-use due process opinions, Maryland Reclamation has not shown that it has a constitutionally protected property interest which has been denied without due process of law.

In *Gardner v. Baltimore Mayor & City Council, supra,* 969 F.2d 63, a developer and several lot owners sought damages against the City of Baltimore, under 42 U.S.C. § 1983, based upon the City's alleged delay in acting upon the developer's application for a "public works agreement" which, under the applicable local law, was a condition for proceeding with the planned development. The developer and lot owners argued that the City's delay "was arbitrary and capricious and, therefore, violated their right to substantive due process." 969 F.2d at 68. The United States Court of Appeals for the Fourth Circuit, in rejecting the claim for damages, set forth the theory which Maryland Reclamation quotes and relies upon in the present case (*ibid.*):

"Several [federal] circuits have applied *Roth 's* [*Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ] 'claim of entitlement' standard to substantive due process challenges to municipal land-use decisions. Under this approach, whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest. *See, Spence v. Zimmerman,* 873 F.2d 256, 258 (11th Cir.1989); *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 918 (2d Cir.1989); *Carolan v.*

---

**13.** For discussions of the perceived differences among the various federal appellate circuits in this area, *see, e.g., Pearson v. City of Grand Blanc,* 961 F.2d 1211 (6th Cir.1992); *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 914–918 (2d Cir.), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Red Maple Properties v. Zoning Com'n, supra,* 222 Conn. at 736–739, 610 A.2d at 1241–1242.

*City of Kansas City, Mo.,* 813 F.2d 178, 181 (8th Cir.1987). *See also Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Ks.,* 927 F.2d 1111, 1116 (10th Cir.1991) (adopting this standard in a case involving procedural due process). Under this standard, a cognizable property interest exists 'only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured.' *RRI Realty,* 870 F.2d at 918."

Maryland Reclamation, after quoting from *Gardner,* asserts that, after Maryland Reclamation's property was included in the County's Solid Waste Management Plan, and after the approval by the State Department of the Environment, Harford County lacked "all discretion involved in the permitting process" (appellant's brief at 27–28). The only action by Harford County complained of, however, and the only relevant action taken by Harford County, was the enactment of two land-use ordinances. Clearly, a local government does not lack "all discretion" with regard to the enactment of new land-use ordinances.

Moreover, as the above-quoted language from the *Gardner* case indicates, the due process principle there involved is applicable when a local government acts "to deny issuance of the permit or to withhold its approval." (969 F.2d at 68). The principle relates to " 'approval of a proper application' " (*ibid.*). In the present case, however, the only "permit" involved is the permit to operate a rubble landfill, and it is issued by the State Department of the Environment, Code (1982, 1996 Repl. vol.), § 9–204 *et seq.* of the Environment Article. Maryland Reclamation has not been denied such a permit; on the contrary, it has been issued a permit to operate a rubble landfill at its Gravel Hill Road site.[14] Although Maryland Reclamation has complained about Bill 91–16 relating to the Harford County Solid Waste Management Plan, Maryland

---

14. Maryland Reclamation has not in this case specifically complained about any of the conditions attached to the permit, and it has not made the State Department of the Environment or the Secretary of the Environment a party.

Reclamation's Gravel Hill Road site is still included in the County's Solid Waste Management Plan. While County Council Resolution 15–91 purported to remove the property from the plan, the judgment of the circuit court invalidated that resolution on its face. Harford County has acquiesced in that invalidation by filing no appeal from the judgment; that portion of the circuit court's judgment is not before us and is final. As far as the record in this case shows, and as far as we are aware, Maryland Reclamation requires no permits or "approvals" from Harford County in order to commence using its property in accordance with the state permit. Even if it be assumed *arguendo* that Maryland Reclamation has a constitutionally protected property interest in the permit or permitting process under *Gardner* and the other cases relied on, there has been no denial of an application for a permit or approval, and thus no denial of a property right.

What Maryland Reclamation is actually complaining about is Harford County's enactment of Bill 91–10 purporting to change the zoning requirements for rubble landfills. Based on the language of the bill, statements by some legislators who voted for the bill, and the May 2, 1991, letter from the Director of Planning, Maryland Reclamation apparently anticipates that Harford County will take the position that the new zoning requirements apply to the Gravel Hill Road property, that the requirements can validly be applied to the property under the circumstances and in light of the Environment Article of the Code as well as other principles of Maryland law, and that Maryland Reclamation's operation of the rubble landfill will be deemed to violate applicable local zoning. Nevertheless, as discussed in Part III of this opinion, Maryland Reclamation has not requested a ruling by the Zoning Administrator and Board of Appeals concerning the applicability of Bill 91–10, and the landowner has never requested a variance or exception. In connection with the applicability of particular zoning requirements, Maryland Reclamation has submitted no requests which have been denied.

In *Gardner,* in the other federal land-use cases specifically relied on by Maryland Reclamation, and in all of the other previously cited land-use cases under 42 U.S.C.1983 involving the alleged denials of claimed property rights in permits or approvals, there were governmental denials of, or delays in acting upon, the plaintiffs' applications for permits or approvals, or revocations of permits or approvals. *See, e.g., Biser v. Town of Bel Air, supra,* 991 F.2d at 102 (denial of an application for a special exception); *Taylor Inv. Ltd. v. Upper Darby Tp., supra,* 983 F.2d at 1292 (revocation of a use permit, but the court nevertheless held that the landowner had not shown that an assumed property interest in the permit had yet been denied because "the Township has rendered no final decision regarding the revocation of the permit"); *Pearson v. City of Grand Blanc, supra,* 961 F.2d at 1214 (plaintiff's application for rezoning of his property was denied); *Nasierowski Bros. Inv. v. City of Sterling Heights, supra,* 949 F.2d at 891–892 (denial of an application for a variance); *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989) (denial of an application for a building permit); *Brady v. Town of Colchester, supra,* 863 F.2d at 209 (denial of applications for a certificate of occupancy and other permits); *Yale Auto Parts, Inc. v. Johnson, supra,* 758 F.2d at 55 (denial of an application for "a certificate of location approval" to operate a motor vehicle junkyard business); *Scott v. Greenville County, supra,* 716 F.2d at 1412–1413 (an application for a building permit was denied); *United Land Corp of America v. Clarke, supra,* 613 F.2d at 498 (denial of an application for a soil erosion permit).

There is a difference between (1) a failure to exhaust administrative remedies, which ordinarily is not required to maintain an action under 42 U.S.C. § 1983, and (2) a failure to show that a governmental administrative official or agency has denied a claimed constitutionally protected property right, which relates to the merits of the § 1983 cause of action. The distinction was explained by the Supreme Court in *Williamson Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105

S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson,* a landowner-developer maintained that a county's change in zoning and subdivision regulations had deprived the landowner of all reasonable beneficial use of its property and that, therefore, there had been a taking of the property in violation of the Just Compensation Clause of the Fifth Amendment. The landowner brought an action for damages under 42 U.S.C. § 1983. The Supreme Court, reversing a judgment in favor of the landowner by the United States Court of Appeals for the Sixth Circuit, stated (473 U.S. at 186, 105 S.Ct. at 3116, 87 L.Ed.2d at 139):

> "Because respondent has not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, nor utilized the procedures Tennessee provides for obtaining just compensation, respondent's claim is not ripe."

The Court went on to explain the difference between the exhaustion of administrative remedies, which is not required in a § 1983 action, and the question of ripeness (473 U.S. at 192–193, 105 S.Ct. at 3119–3120, 87 L.Ed.2d at 142–143):

> "Respondent asserts that it should not be required to seek variances from the regulations because its suit is predicated upon 42 U.S.C. § 1983, and there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action. *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable.... While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be

unlawful or otherwise inappropriate. *Patsy* concerned the latter, not the former."

The Court, turning to the facts in the case before it, explained why the landowner's constitutional claim was not ripe for judicial consideration (473 U.S. at 193–194, 105 S.Ct. at 3120, 87 L.Ed.2d at 143):

"[R]esort to the procedure for obtaining variances would result in a conclusive determination by the Commission whether it would allow respondent to develop the subdivision in the manner respondent proposed. The Commission's refusal to approve the preliminary plat does not determine that issue; it prevents respondent from developing its subdivision without obtaining the necessary variances, but leaves open the possibility that respondent may develop the subdivision according to its plat after obtaining the variances. In short, the Commission's denial of approval does not conclusively determine whether respondent will be denied all reasonable beneficial use of its property, and therefore is not a final, reviewable decision."

*See also MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986).

The ripeness principle of the *Williamson* case has been applied in § 1983 actions by property owners claiming that governmental land-use regulations have deprived them of claimed property rights in permits or approvals in violation of the Due Process Clause of the Fourteenth Amendment. Thus, in *Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1232 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994), involving a "substantive" due process challenge to the application of a city's land-use regulations, the United States Court of Appeals for the Ninth Circuit stated:

"We have held that *MacDonald* and *Williamson* require a final decision by the government agency that inflicts a concrete harm on the landowner. *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1454 (9th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988). Typically, before a decision is final the landowner must have submitted

one formal development plan and sought a variance from any regulations barring development in the proposed plan that have been denied. *Herrington v. County of Sonoma,* 857 F.2d 567, 569 (9th Cir.1988), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989); *Kinzli,* 818 F.2d at 1454–55."

*See, e.g., Gamble v. Eau Claire County,* 5 F.3d 285, 287 (7th Cir.) (1993), *cert. denied,* 510 U.S. 1129, 114 S.Ct. 1096, 127 L.Ed.2d 410 (1994) ("*Williamson* holds that even if a taking can be challenged as a denial of substantive due process, a suit based on this theory is premature if the plaintiff has possible state remedies against the zoning regulation or other state action that he wants to attack"); *Taylor Inv., Ltd. v. Upper Darby Tp., supra,* 983 F.2d at 1290 (challenges under 42 U.S.C. § 1983 to a land-use decision "are not ripe unless plaintiff has given local land-planning authorities the opportunity to render a final decision on the nature and extent of the zoning ordinances on plaintiff's property"). *See also Nasierowski Bros. Inv. v. City of Sterling Heights, supra,* 949 F.2d at 894–895 (taking the position that the *Williamson* ripeness principle was applicable to "substantive due process" and other constitutional claims but not "procedural due process" claims).

## B.

It is clear that Maryland Reclamation's principal argument in its § 1983 action, namely that it was denied a property right in a permit or approval or in a particular zoning status, is not ripe for judicial decision under the *Williamson* principle. Similarly, the landowner's alternative theory, that Bills 91–10 and 91–16, as applied to the Gravel Hill Road property, violate the Due Process Clause because Maryland Reclamation was the "target" of the legislation, is not ripe for judicial decision.[15]

---

**15.** With regard to arguments based upon the motivation of legislators, *see, e.g., Daniel v. Family Security Life Ins. Co.,* 336 U.S. 220, 224, 69 S.Ct. 550, 552, 93 L.Ed. 632, 636 (1949) ("a judiciary must judge by results, not by the varied factors which may have determined legisla-

If the two ordinances are inapplicable to Maryland Reclamation's property, or if the landowner obtains a variance or exception, there could be no violation of its claimed due process rights on either theory advanced. Until there is some governmental determination that Maryland Reclamation cannot proceed to operate a rubble landfill under its state permit, its § 1983 action is not ripe for judicial decision.

With regard to Maryland Reclamation's federal due process challenges to the Harford County ordinances, the circuit court should simply declare that the action is not ripe for judicial determination.

*JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY VACATED IN PART, AND CASE REMANDED TO THAT COURT FOR ENTRY OF A JUDGMENT IN ACCORDANCE WITH THIS OPINION. COSTS TO BE EQUALLY DIVIDED BETWEEN MARYLAND RECLAMATION AND HARFORD COUNTY.*

---

tors' votes. We cannot undertake a search for motive"); *Workers' Compensation Comm'n v. Driver,* 336 Md. 105, 118–119, 647 A.2d 96, 103 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 906, 130 L.Ed.2d 789 (1995); *Mayor, etc. of Balto. v. State,* 15 Md. 376, 461 (1859).