**JEMAL'S FAIRFIELD FARMS, LLC**

v.

**PRINCE GEORGE'S COUNTY, et al.**

No. CIV. RDB 02–2881.

United States District Court,
D. Maryland,
Southern Division.

March 26, 2004.

Ward B Coe, III, Whiteford Taylor and Preston LLP, Pamela Merlis Conover, Whiteford Taylor and Preston, Baltimore, MD, for Jemal's Fairfield Farms, LLC, Plaintiff.

Crystal Dixon Mittelstaedt, Office of Law for Prince George's County, Jay H Creech, Office of Law for Prince George's County, Leonard L Lucchi, Office of Law for Prince George's County, Steven M Gilbert, Prince Georges County Council, Upper Marlboro, MD, for Prince George's County, Marvin Wilson, Defendants.

## MEMORANDUM OPINION

BENNETT, District Judge.

Before the Court are (1) Plaintiff's Motion for Partial Summary Judgment and (2) Defendants' Motion for Summary Judgment. The issues have been fully briefed, and no hearing is necessary. Local Rule 105.6 (D.Md.2002). For the reasons that follow, the Court will grant Plaintiff's Motion in part by declaring unconstitutional a portion of the disputed ordinances, deny the remainder of Plaintiff's Motion, and deny Defendants' Motion in its entirety.

### Background

This action involves a constitutional challenge to four Prince George's County Code Zoning Ordinances, which Plaintiff contends were enacted for a retaliatory motive to prohibit it from engaging in certain uses of its property. In the summer of 1998, Plaintiff, Jemal's Fairfield Farms, LLC, outbid Prince George's County and entered a contract for the purchase of a thirty-seven acre parcel of property located on Addison Road in Prince George's County, Maryland, near the border with the District of Columbia (hereinafter, the "Property"). The transaction closed in December 1998. At the time of the purchase, the Property was located in three zones, I–1 (light industrial), I–2 (heavy industrial), and C–O (commercial office).

On May 12, 1998, when the sale of the Property to Plaintiff seemed imminent, Prince George's County Councilman Marvin Wilson proposed bill number CB–75–1998, which would have either prohibited or required a special exception for certain uses in the I–1 or I–2 zone if the federal government or one of its agencies previously held title to the land. Wilson was one of the persons leading the effort to purchase the Property, which was in his district, for the purpose of erecting a school. Among the uses requiring a special exception was a vehicle towing station, one of the uses contemplated by Plaintiff. At a public hearing on the bill on June 8, 1998, Wilson was unable to articulate any basis for regulating only land previously owned by the federal government. The bill was subsequently enacted and revised. In its revised form, the bill required special exception approval for most uses otherwise permitted in the I–1 and I–2 zones on land which was "10 acres or greater in size, located within 300 feet of any residentially-zoned land and land owned by the Washington Metropolitan Area Transit Authority." That description pertained exclusively to the Property, because no other land in the County met both requirements as to location.

Following the enactment of CB–75–1998, one use permitted on the Property was public buildings and uses. In 2000, representatives of Plaintiff met with representatives of the District of Columbia Conven-

tion Center to negotiate a contract relating to the use of the Property for truck marshalling, the temporary parking of vehicles that transport exhibits to the Convention Center. Such a use of the Property could be considered a public use. On March 21, 2000, Wilson proposed bills CB–20–2000 and CB–21–2000, "due to concerns that a truck marshalling yard may locate in his district and serve a use outside of the County." As enacted on April 11, 2000, CB–20–2000 redefined "public buildings and uses" to exclude "any vehicle or trailer parking, storage, or marshalling use which does not serve a public building or use in the County." CB–21–2000 eliminated the requirement that the parcel be ten acres or greater in size before being subject to the restrictive provisions of CB–75–1998. That ordinance eliminated the loophole that fewer than ten acres of the Property could be used for industrial uses without a special exception. On June 16, 2000, the Council enacted CB–13–2000, which amended the existing definition of "Trucking Operations," a use permissible in the I–1 and I–2 zones, to exclude truck marshalling which serves a use or a property outside the County.

On June 15, 2001, Plaintiff obtained a Building Use and Occupancy Permit to develop and operate a vehicle towing station on a 5.75–acre portion of the Property located in the I–1 and I–2 zones. The Maryland–National Capital Park and Planning Commission reviewed the permit application and advised the County's Department of Environmental Resources on July 5, 2001 that it had been issued in error. On July 9, 2001, the County notified Plaintiff that the permit had been incorrectly issued and required Plaintiff to seek to have the permit validated by the District Council or to apply for a special exception. On or about August 15, 2001, Plaintiff leased that portion of the Property to the District of Columbia for the impoundment of ticketed and abandoned vehicles that had been towed. The Prince George's County Zoning Hearing Examiner denied Plaintiff's request to have the permit validated.

On August 29, 2002, Plaintiff brought suit in this Court against Prince George's County and Councilman Wilson seeking a permanent injunction restraining the County from enforcing the ordinances, a declaratory judgment finding the ordinances unconstitutional, and monetary damages. Plaintiff amended the Complaint in November 2002 to add the Maryland National Capital Park and Planning Commission as a defendant, but subsequently stipulated to a dismissal of that entity with prejudice. In its current incarnation, the Amended Complaint states two causes of action against the County and Wilson. Count I alleges that the County's enactment of the ordinances burdens interstate commerce in violation of Article I, section 8 of the United States Constitution. Count II alleges that the County and Wilson arbitrarily and capriciously targeted the property by proposing and enacting the ordinances, which action violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. On January 31, 2003, Plaintiff moved for partial summary judgment seeking a declaratory judgment that the ordinances are void and an injunction prohibiting their enforcement. On December 2, 2003, Defendants moved for summary judgment.

### Standard for Summary Judgment

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the

Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the moving party has met its responsibility of identifying the basis for its motion, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir.1987) (quoting *Celotex Corp.*, 477 U.S. at 323–24, 106 S.Ct. 2548; Fed.R.Civ.P. 56(e)). The existence of a mere "scintilla" of evidence in support of the nonmoving party's case is insufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

When both parties file motions for summary judgment, the Court applies the same standard of review, but is obligated to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co.*, 627 F.Supp. 170, 172 (D.Md.1985) (quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* 2d § 2720 (2d ed.1993)); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (4th Cir.1983), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The Court must "evaluate each party's motion on its own merits, taking care … to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir.1987). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir.1967); *see also McKenzie v. Sawyer*, 684 F.2d 62, 68 n. 3 (D.C.Cir.1982) ("neither party waives the right to a full trial on the merits by filing its own motion"). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non-existence of a factual dispute." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir.1983).

### *Analysis*

#### 1. *Standing*

As a threshold matter, the Court must determine whether Plaintiff has standing to challenge the enactment of the ordinances. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (standing is a threshold question in every federal case). The standing requirement "is an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), and has been characterized as "perhaps the most important" condition of justiciability, *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Although the Supreme Court has not defined standing with complete consistency, "the irreducible constitutional minimum of standing requires: (1) that the plaintiff personally has suffered actual or threatened injury that is concrete and particularized, not conjectural or hypothetical; (2) that the injury fairly can be traced to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision from the court." *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998) (citing *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

In *Scott v. Greenville County*, 716 F.2d 1409, 1414 (4th Cir.1983), in an opinion by Chief Judge Winter, the Fourth Circuit noted that

> [t]he constitutional dimension of standing exists "where the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf ... The constitutional requirement operates to ensure that a particular plaintiff is adequately interested in a justiciable case or controversy. That requirement is satisfied if the plaintiff alleges that he has suffered an injury that "is indeed fairly traceable to the defendant's acts or omissions." "

*Id.* at 1414 (quoting *Warth v. Seldin*, 422 U.S. at 498–99, 95 S.Ct. 2197; *Village of Arlington Heights v. Metropolitan Housing Dev't Corp.*, 429 U.S. 252, 261, 97 S.Ct.

555, 50 L.Ed.2d 450 (1977)). The court held that a real estate developer who alleged violation of his constitutional rights as the result of withholding of a building permit had standing to sue under § 1983 and had a protectable property interest.

■ The standing inquiry also implicates prudential limitations on the exercise of courts' remedial powers. *Warth*, 422 U.S. at 498, 95 S.Ct. 2197. For example, courts generally decline to exercise jurisdiction where the asserted harm is a "generalized grievance shared in substantially equal measure by all or a large class of citizens" or where the plaintiff "rest[s] his claim to relief on the legal rights or interests of third parties." *Id.* at 499, 95 S.Ct. 2197. The plaintiff's claim also must lie "within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge*, 454 U.S. at 475, 102 S.Ct. 752 (quoting *Warth*, 422 U.S. at 499–500, 95 S.Ct. 2197; *Assoc. of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)); *see also Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). When both constitutional requirements and prudential considerations are met, a party has standing to bring a claim. *See generally Valley Forge*, 454 U.S. at 471–75, 102 S.Ct. 752.

■ With respect to the first constitutional requirement, injury-in-fact, Plaintiff has offered uncontested evidence that the County's enactment and enforcement of the ordinances has frustrated its efforts to develop the site for use as a truck marshalling facility. In its Answer to Wilson's Interrogatory No. 9, Plaintiff detailed its efforts to negotiate a contract with the District of Columbia Convention Center:

> Beginning in 2000[,] Paul Millstein met with representatives of the District of Columbia Convention Center numerous

times to negotiate a truck marshalling deal. ... The Convention Center was in desperate need of a marshalling road and identified the Property as the best location. Representatives of trucking companies came to the Property to check the turning radius. The Director of Operations for the Convention Center also came to the Property. Safety inspectors from the Convention Center inspected the Property as well. A site plan was drafted. Fairfield Farms negotiated several draft leases with the Convention Center. The original lease, negotiated on or about January 26, 2002, called for a rent of $10,000 per month for eight months with two one[-]year renewal options. The lease also included an option to develop a permanent marshalling yard for a ten[-]year term with two five[-]year renewal options. A later version of the lease called for a one[-]year lease with a start date of February 7, 2001, with a rent of $120,000.00 per annum. This lease included a three[-]year renewal at a base rent of $126,000.00 per year. The Convention Center became increasingly concerned about the zoning restrictions on the Property and backed out of the deal. Thereafter, on or about March 18, 2003, Fairfield Farms proposed a thirty[-]day trial period with the possibility of negotiating a longer deal. Based on the lack of assurances regarding the zoning, the Convention Center rejected this offer as well.

Ex. C to Pl.'s Opp. to Defs.' Mot. for Summ. Jgm. It is well-established that the loss of an opportunity may give rise to standing where there is a plausible prospect that a benefit would have resulted from the foreclosed opportunity. *See, e.g., Regents of Univ. of California v. Bakke,* 438 U.S. 265, 280 n. 14, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (standing to challenge minority admissions program upheld without any showing that, but for preference, plaintiff would have been admitted); *Village of Arlington Heights v. Metropolitan Housing Dev't Corp.,* 429 U.S. at 260–64, 97 S.Ct. 555 (standing established where plaintiffs showed that, but for the challenged ordinances, there was a real possibility that a specific housing project would have been created for their benefit).

■ In addition to the loss of the business opportunity, Plaintiff has also offered evidence that the ordinances interfere with Plaintiff's ability to use the Property as a vehicle towing station. Subsequent to the enactment of the ordinances, Plaintiff leased a portion of the Property to the District of Columbia for use as a storage lot for towed and impounded vehicles. The County issued and then revoked Plaintiff's permit to operate a vehicle towing station on the Property. Plaintiff applied for validation of the permit and was rejected. Although Plaintiff has leased the property since 2001, it contends that the District of Columbia has declined to extend the lease for an additional term because of the zoning restrictions. *See* Pl.'s Ex. D. Plaintiff's injury is both "concrete" and "imminent": if the ordinance is upheld, absent a special exception, Plaintiff will be unable to continue its existing commercial use of the Property. Defendants correctly note that "inherent in both deals, the truck[ ] marshalling deal and the extension of the vehicle towing station deal is the action of the District of Columbia, a third party, who may choose not to negotiate the deal for any number of reasons unrelated to the enactment of the zoning legislation." However, CB–75–1998 imposes restrictions on most commercial activities normally conducted in an I–1 or I–2 zone absent a special exception. Plaintiff's injury is particularized because it appears that the ordinances were specifically targeted at the Property. For example,

Plaintiff has alleged that CB–75–1998's geographic criteria do not apply to any other I–1 or I–2 zoned property in Prince George's County.[1] *See* Compl. ¶ 24.

With respect to the second constitutional requirement of standing, causation, Plaintiff has carried its burden. Plaintiff has alleged that, as a result of the ordinances, which target only its Property, the Property has been rendered commercially useless. The Court does not necessarily agree with that assessment, particularly in light of the continued lease of the Property to the District of Columbia since 2001. However, the record does indicate that, but for the ordinances, which require a special use permit for many commercial uses, Plaintiff would be able to pursue a greater range of business opportunities. Similarly, Plaintiff has adduced evidence that, but for the ordinances, which prevent the use of the Property as a truck marshalling lot, Plaintiff may have been able to consummate a contract with the District of Columbia Convention Center.

With respect to the third constitutional requirement, redressability, there is no dispute that a decision striking the challenged ordinances would allow Plaintiff to obtain a permit to conduct its business as a vehicle towing center and develop the Property as a truck marshalling yard.

The prudential considerations similarly weigh in favor of standing. Plaintiff's claims cannot be characterized as a "generalized grievance" and are not dependent upon an adjudication of the rights of third parties. Finally, the Court finds that the claims fall within the zone of interests protected by the dormant Commerce Clause and the Fourteenth Amendment.

For all of the foregoing reasons, the Court concludes that Plaintiff has standing to pursue its claims.

2. *Failure to Exhaust Administrative Remedies*

■ Defendants next contend that Plaintiff's claims are not ripe because Plaintiff did not apply for a special exception to use the Property as a vehicle towing station. The County's July 9, 2001 letter to Plaintiff states that the "remedy to a permit issued in error is for the permit to be validated by the District Council in accordance with Section 27–258 of the Zoning Code. *Another alternative that you could take would be to obtain a special exception for this use.*" Pl.'s Ex. 16 (emphasis added). The record indicates that Plaintiff applied for validation of its June 15, 2001 permit and that the Zoning Hearing Examiner recommended denial of the claim. The record is silent as to whether Plaintiff took any additional steps to obtain review of the District Council's decision.[2]

1. Defendants dispute that allegation by reference to a map attached to the County's Answers to Plaintiff's Interrogatories, which depicts land either within 300 feet of any residentially zoned land or land owned by the Washington Metropolitan Area Transit Authority. Plaintiff, however, notes that Defendants interpret CB–75–1998 inconsistently with its legislative history and Prince George's County Code Definitions § 13, which states that "[u]nless the context indicates to the contrary, where a regulation involves two (2) or more items connected by the conjunctions "and," "or," or "either ... or," the conjunction shall be interpreted as follows: (A) "And" indicates that all the connected items shall apply." *See* Pl.'s Ex. 4 § 13.

2. Defendants do note, however, that "the matter regarding the revocation of the permit, issued in error, allowing operation of a vehicle towing station is on appeal in the Court of Special Appeals of Maryland, and is therefore of no issue before this Court." Defs.' Mem. at 8. However, Plaintiff has challenged the constitutionality of the ordinances requiring revocation of the permit on the basis that they violate the Commerce Clause and the Equal Protection Clause of the Fourteenth Amend-

■ Assuming that Plaintiff failed to exhaust its administrative remedies prior to filing suit, such action would not prove fatal to its claims. Generally, state law requirements that administrative remedies first be exhausted are inapplicable to § 1983 actions to remedy constitutional violations. *Patsy v. Florida Bd. of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 12–14, 511 A.2d 1079, 1084–85 (1986); *Md. Reclamation Assocs. v. Harford County,* 342 Md. 476, 492, 677 A.2d 567, 575 (1996). In *Maryland Reclamation Associates, Inc. v. Harford County,* the plaintiff contracted to purchase property in Harford County to operate a rubble landfill. The County Council enacted two zoning ordinances and passed a resolution restricting the plaintiff's ability to use the property for that use. The plaintiff declined to pursue its available administrative remedies, such as seeking a ruling from the Zoning Administrator, applying for a variance, or challenging the constitutionality of the ordinances at the County Board of Appeals. Instead, it filed suit in the Circuit Court for Harford County, alleging, *inter alia,* a violation of its substantive due process rights under the Fourteenth Amendment. The plaintiff alleged that the ordinances were arbitrary, capricious and unreasonable as applied to the property. The Maryland Court of Appeals held that it was appropriate for the Circuit Court to consider the Fourteenth Amendment claims, notwithstanding the plaintiff's failure to exhaust his administrative remedies. *Id.* at 492, 677 A.2d at 575.

■ The Court of Appeals has also not required exhaustion of administrative remedies where a challenge to a zoning ordinance goes beyond an allegation that the ordinance is unconstitutional as applied to the plaintiff's land and asserts that the ordinance is facially unconstitutional. *Poe v. City of Baltimore,* 241 Md. 303, 309, 216 A.2d 707, 710 (1966) ("One category in which the principle that an equity court may take jurisdiction over a dispute as to constitutionality may come into play comprises the cases involving constitutional attack upon the validity of a general statutory enactment as a whole (as contrasted with its application to particular facts)."); *Md. Reclamation Assocs.,* 342 Md. at 494, 677 A.2d at 576 ("where the constitutionality of a statute on its face is challenged, and where there exists a recognized declaratory judgment or equitable remedy, we have held that the challenger ordinarily need not invoke and exhaust his administrative remedy")(citing *Ins. Comm'r v. Equitable,* 339 Md. 596, 621, 664 A.2d 862, 875 (1995)). Similarly, exhaustion is not required if the lawsuit involves a challenge to the validity of an ordinance which was enacted specifically to target property of the plaintiff. *Poe,* 241 Md. at 309, 216 A.2d at 710.

In *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 386, 47 S.Ct. 114, 71 L.Ed. 303 (1926), the Supreme Court rejected a motion to dismiss a complaint on the basis that the plaintiff had not attempted to obtain a building permit or to exhaust its administrative remedies.

> [T]he effect of the allegations of the bill is that the ordinance of its own force operates greatly to reduce the value of appellee's lands and destroy their marketability for industrial, commercial and residential uses, and the attack is directed, not against any specific provision or provisions, but against the ordinance as

ment. Accordingly, this Court will not abstain from exercising its jurisdiction, even though Plaintiff's appeal from a questionable

administrative decision may be pending in the state appellate court.

an entirety. Assuming the premises, the existence and maintenance of the ordinance in effect constitutes a present invasion of appellee's property rights and a threat to continue it. Under these circumstances, the equitable jurisdiction is clear.

*Id.* at 386, 47 S.Ct. 114.

Plaintiff has alleged in Count I that the ordinances are facially invalid because they burden interstate commerce. Plaintiff has alleged in Count II that the ordinances arbitrarily and capriciously restrict Plaintiff's use of the Property in violation of the Equal Protection Clause of the Fourteenth Amendment. In light of the above precedent, the Court finds the allegations of the Amended Complaint sufficient to establish a justiciable case or controversy that warrants the exercise of its jurisdiction.

### 3. *The Dormant Commerce Clause*

In Count I of the Amended Complaint, Plaintiff contends that the ordinances are protectionist in nature and burden interstate commerce in violation of the Commerce Clause of the United States Constitution. The Commerce Clause provides that "[t]he Congress shall have Power ... [t]o regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. As the United States Court of Appeals for the Fourth Circuit has recently summarized, "[t]his affirmative duty to regulate commerce carries with it an implied 'dormant' aspect that restricts the power of the states to burden interstate commerce." *Beskind v. Easley,* 325 F.3d 506, 514 (4th Cir.2003) (citing *Dennis v. Higgins,* 498 U.S. 439, 447, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991)). Judge Niemeyer noted in *Beskind* that

a law that discriminates against interstate competition is the clearest example of the type of State law that imposes an unconstitutional burden on that com-

merce. ... As prohibited by the "dormant" Commerce Clause, discrimination means simply "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."

*Id.* (quoting *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality,* 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994)).

Courts apply a two-tiered analysis to state actions allegedly violating the dormant Commerce Clause. The first tier, "a virtually *per se* rule of invalidity, applies where a state law discriminates facially, in its practical effect, or in its purpose." *Wyoming v. Oklahoma,* 502 U.S. 437, 454–55, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992) (quoting *City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978)). For a law to survive that scrutiny, the state must prove that the discriminatory law "is demonstrably justified by a valid factor unrelated to economic protectionism," *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269, 274, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988), and that there are no "nondiscriminatory alternatives adequate to preserve the local interests at stake," *Chemical Waste Management, Inc. v. Hunt,* 504 U.S. 334, 342, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992) (quoting *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 353, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). The Fourth Circuit has noted that, to date, discriminatory laws have been upheld only when necessary to mitigate the risk of death or disease. *Environmental Tech. Council v. Sierra Club,* 98 F.3d 774, 785 (4th Cir.1996) (citing *Maine v. Taylor,* 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986) (upholding Maine's prohibition on importation of live baitfish because of potential for destruction of its fisheries); *Clason v. Indiana,* 306 U.S. 439, 59 S.Ct. 609, 83 L.Ed. 858 (1939) (upholding

Indiana's restrictions on transportation of dead animals because of potential for disease)).

A second tier analysis applies where a state statute "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). In such a case, the statute will be upheld "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits ...." *Id.*

a. Ordinances CB–20–2000 and CB–13–2000

In applying the two-tiered analysis under the Commerce Clause, this Court first analyzes all four ordinances to determine if any are *"per se"* invalid as the result of "simple economic protectionism." *City of Philadelphia v. New Jersey*, 437 U.S. at 624, 98 S.Ct. 2531. Two of the ordinances cannot survive this first test. Ordinance CB–20–2000, which amends the definition of "public buildings and uses" to exclude a vehicle or trailer parking storage or marshalling use that does not serve a public building or use in the County, facially and effectively burdens interstate commerce by prohibiting Plaintiff from operating a truck marshalling lot to serve trucks from the neighboring District of Columbia. Similarly, CB–13–2000, which amends the definition of "trucking operations" to exclude truck marshalling that serves a use outside of the County, discriminates against interstate commerce. Therefore, under the *per se* rule, to survive summary judgment, the County must "demonstrate issues of fact regarding whether the laws are justified by a valid factor unrelated to economic protectionism and, if so, that there are no neutral alternatives avail-able." *Envt'l Technology Council*, 98 F.3d at 786.

Defendants contend that the ordinances protect and promote the health, safety, morals, comfort, convenience and welfare of the present and future inhabitants of the County. They cite to the enabling legislation, which gives the Prince George's County Council the express and exclusive legislative authority to enact zoning ordinances for the protection and promotion of public safety, health, morals and welfare. *See* Defs.' Reply Mem. at 1–2. They argue that CB–20–2000 and CB–13–2000, which prohibit truck marshalling in the County for outside use, are not protectionist measures, because they favor neither businesses inside the County, nor businesses outside the County, and because they are "applied evenhandedly" and "regulate[ ] the activity or use to promote the well-being of [County] residents." *Id.* at 3.

Defendants' conclusions are unsupported and insufficient to raise a genuine issue of material fact. The Prince George's County Council Agenda Item Summary notes that Defendant Wilson explained to the Planning, Zoning and Economic Development Committee on March 16, 2000 that he proposed CB–20–2000 "due to concerns that a truck marshalling yard may locate in his district and serve a use outside of the County." Pl.'s Ex. 9. Further, a letter from Wilson to the Chairman of the Committee dated March 15, 2000 confirms that the bill was proposed in reaction to an article in the Washington Post indicating that the Washington Convention Center Authority had negotiated a 10–year lease worth $1.4 million for nine acres on the Property to be used as a truck marshalling yard. *See* Pl.'s Ex. A. Defendants have introduced no evidence that the bill was introduced for any reason other than to preclude Plaintiff from engaging in that

use. As such, the ordinance is overtly protectionist.

With respect to CB–13–2000, the Agenda Item Summary indicates that Defendant Wilson proposed an amendment to the legislation to add a definition of Truck Marshalling to the Zoning Ordinance and to amend the existing definition for Trucking Operations to clarify that the use may not include Truck Marshalling which serves a use or a property outside the County. The ordinance also permits trucking operations in the I–1 zone under certain circumstances. As enacted, the ordinance defines Truck Marshalling as follows:

> (243.4) Truck Marshalling: The temporary parking or storage on a property of trucks or other vehicles which transport goods to or from another property, such as an office building, retail or wholesale center, or meeting or convention site. The vehicles are temporarily parked or stored at the "Truck Marshalling" property before they are driven to the property being served, where the transported goods are loaded or unloaded. *"Truck Marshalling" is not permitted within the County to serve properties outside the County.*

Pl's Ex. 12 (emphasis supplied). "Trucking Operation" is defined as follows:

> [ (243.4) ] (*243.5*) Trucking Operation: Any facility, other than the administrative offices, of a business established for the purpose of carting, hauling, moving, or otherwise transporting goods, materials, equipment, supplies, possessions, vehicles, or other items by truck for compensation. A "Motor Freight" company is a "Trucking Operation." No storage building used by a "Trucking Operation" shall be considered a "Distribution Facility" or "Warehouse Unit." *A "Trucking Operation" may not include "Truck Marshalling" which serves a use or a property outside the County.*

*Id.* (emphasis in original). The final sentences in each definition manifest the County's intention to discriminate against out-of-County interests. Like CB–20–2000, these portions of CB–13–2000 were proposed by Defendant Wilson to block Plaintiff's ability to lease the Property to the Washington Convention Center Authority for use as a truck marshalling yard. *See* Pl.'s Ex. A. The ordinance's practical effect is even broader, however. It prohibits Plaintiff from contracting with the District of Columbia or any other business in the District or neighboring counties to park trucks that transport goods to or from the District or neighboring counties on the Property. Absent some compelling public interest which can be served by no less discriminatory alternatives, the County may not define a use permitted in certain zones to exclude activities that serve uses outside the County. The proper course in this instance is to declare only the portions of the definitions that impose these restrictions unconstitutional. *See Allen v. Louisiana,* 103 U.S. 80, 83–84, 26 L.Ed. 318 (1880) ("[T]he same statute may be in part constitutional and in part unconstitutional, and ... if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected."), *quoted with approval in Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 502, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).

Because Defendants have neither articulated a legitimate purpose related to the health, safety, morals or welfare of County residents, nor demonstrated that no reasonable nondiscriminatory alternatives adequate to conserve those interest are available, CB–20–2000 and the final sentences of the definitions of "Truck Marshalling" and "Trucking Operation" in CB–13–2000 are facially unconstitutional in violation of

the Commerce Clause. Accordingly, summary judgment will be granted in favor of Plaintiff and against Defendants on Count I as to CB–20–2000 and the relevant portions of CB–13–2000. Defendants' Motion will be denied as to these ordinances.

### b. Ordinances CB–75–1998 and CB–21–2000

■ Ordinance CB–75–1998 was enacted on July 7, 1998. Defendants accurately note that this was prior to the formal settlement on the Property by Plaintiff. However, Plaintiff contends that it entered into a contract to purchase the Property in the summer of 1998, with settlement occurring in December of that year. *See* Pl's. Ex. 1 ¶ 9. CB–75–1998 requires special exception approval for certain uses of property located within I–1 and I–2 zones within a specified geographic area. CB–21–2000 subsequently amended CB–75–1998 to narrow the uses permitted on land meeting the geographic criteria. The two ordinances do not indicate local protectionism on their faces. However, Plaintiff asserts that the ordinances were enacted with the purpose to discriminate against traffic from the District of Columbia and, as applied to the Property, have that effect. As evidence, Plaintiff notes that the ordinances target only the Property and offers the statements of Defendant Wilson during the public hearings on the bill that became CB–75–1998. Defendants dispute that only the Property is so burdened. The record contains more than a mere scintilla of evidence to raise a factual question as to whether the regulation of land in CB–75–1998 and CB–21–2000 serves a legitimate public interest, and therefore, the

Court declines to grant summary judgment in favor of either Plaintiff or Defendants. Moreover, neither side has briefed the matter of whether the second-tier Commerce Clause analysis applies to these ordinances. Assuming that the ordinances are neutral in their effect and only incidentally burden interstate commerce, summary judgment cannot be granted absent evidence that the burden on commerce grossly outweighs the putative local benefits. As neither side has addressed the issue, summary judgment is inappropriate.

### 4. *The Equal Protection Clause*

In Count II of the Amended Complaint, Plaintiff contends that the ordinances selectively target the Property in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws," which essentially is a direction that "all persons similarly situated should be treated alike." *City of Cleburne*, 473 U.S. at 439, 105 S.Ct. 3249. The Fourteenth Amendment has no private right of action. Therefore, Plaintiff's claims against Defendants must be brought pursuant to 42 U.S.C. § 1983.[3]

This Court, having just concluded that CB–20–2000 and CB–13–2000 violate the dormant Commerce Clause, need not determine whether they also deprive Plaintiff of equal protection. *See City of Cleburne, Texas v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 447, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (courts should avoid making unnecessarily broad constitutional judgments).

---

**3.** Section 1983 provides, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."

CB–75–1998, which is modified by CB–21–2000, draws a distinction between I–1 or I–2 zoned property located within 300 feet of any residentially-zoned land and land owned by the Washington Metropolitan Area Transit Authority and all other I–1 or I–2 zoned land in the County. The parties appear to concede, and the Court accordingly finds, that the ordinances at issue involve neither a suspect (or quasi-suspect) classification, nor a fundamental right. Therefore, the ordinances are "accorded a strong presumption of validity," *Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), and the Court applies rational basis review. That test does not empower this Court to act as a superlegislator to "judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). For the Plaintiff to prevail on its equal protection claim challenging the enactment of the ordinances, it must demonstrate that there is no rational basis for the ordinances' disparate treatment of I–1 and I–2 property based on its location. "In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans,* 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

 Applying these standards, the Court finds that Plaintiff has produced evidence that the ordinances' classification involves invidious or arbitrary discrimination and is unrelated to a legitimate governmental interest. CB–75–1998 requires special exception approval for certain uses on land ten acres or greater in size that is located within 300 feet of any residentially zoned land and land owned by the Washington Metropolitan Area Transit Authority. Pl.'s Ex. 8. Plaintiff has argued, without introducing evidence, that CB–75–1998, by its terms, applies only to its Property, not to other land in the County. CB–21–2000 amended CB–75–1998 to require special exception approval for uses on land less than ten acres in size that met the other criteria in footnote 38. The record indicates that Plaintiff has leased a 5.75–acre portion of the Property to the District of Columbia for use as a vehicle towing station. As a result of the ordinances, certain uses permitted in all other I–1 and I–2 zoned property, including a vehicle towing station, are not permitted in the Property without a special exception.

The record further indicates that Defendant Wilson first proposed CB–75–1998 to target the Property at a time when its sale was imminent. *See* Pl.'s Ex. 6. The bill originally required a special exception for uses otherwise permissible in the I–1 or I–2 zones where the federal government was ever in the chain of title. When questioned about the purpose of the bill, Wilson stated:

> This piece of legislation was aimed at the area in Fairmount Heights called Fairfield. It's a large area that has just been laid, standing dormant over a long, long period of time. We weren't able to get any developers in there to make any positive changes to it and so we took this approach and geared it toward a special exception for land that was purchased by the government.

Pl.'s Ex. 6 at 5. The bill was modified because other Council members recognized the lack of a rational basis for the distinction. In light of this evidence, the Court may not grant summary judgment for Defendants on Plaintiff's equal protection claim in Count II.

However, summary judgment in favor of Plaintiff is also not warranted at this stage, because the ordinances must be upheld if they bear any reasonable relationship to some legitimate governmental interest. Defendants have asserted that the operation of a vehicle storage lot and/or truck marshalling lot on the Property presents noise, pollution, and traffic concerns worthy of regulation. When there are "plausible reasons" for governmental action, this Court's inquiry must cease. *United States RR Retirement Bd. v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980).

For the foregoing reasons, Plaintiff's and Defendants' Motions for Summary Judgment will be denied as to Count II of the Amended Complaint.

### 5. *Immunity of Councilman Wilson*

In Count II of the Amended Complaint, Plaintiff alleges an equal protection claim against Defendant Wilson for allegedly targeting the Property in retaliation for Plaintiff purchasing land the County was interested in purchasing. Paragraph 20 alleges that

Councilman Wilson, in whose district the Property is located, expressed great displeasure at the fact that Plaintiff was the successful bidder for the Property. Upon information and belief, Councilman Wilson set out to make the Property useless in order to punish Plaintiff for purchasing the Property. Councilman Wilson embarked on a scheme of introducing and promoting successive [C]ounty ordinances which deprived the [P]roperty of any commercial value. His actions were motivated by personal animus and revenge and, in so acting, he conducted himself in both his official capacity and outside the scope of that capacity, as an individual.

Am. Compl. ¶ 20. The claims are predicated upon Plaintiff's belief that Wilson contacted the Zoning Hearing Examiner and instructed her not to validate Plaintiff's erroneously-issued permit and statements allegedly made by Wilson to Douglas Jemal that the County wanted to purchase the Property and that he had zoned the Property to make sure that only a school could be put on it. *See* Pl.'s Answers to Wilson's Interrogs. Nos. 2, 3. Defendants argue that Plaintiff lacks a factual basis to maintain its claims against Wilson, because the County Council, not Wilson, enacted the challenged ordinances. Secondarily, Defendants argue that Wilson is entitled to absolute immunity from suit for his legislative acts, namely introducing the bills and voting in favor of the bills.[4]

■ It is well established that "[m]embers of local governmental bodies are entitled to absolute legislative immunity from claims against them arising out of their actions in a 'legislative capacity.'" *Roberson v. Mullins*, 29 F.3d 132, 134 (4th Cir. 1994). The actions of proposing, discussing, and voting on proposed legislation fall within the ambit of legislative actions. *See, e.g., Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 865 F.2d 77, 79 (4th Cir.1989). Accordingly, Wilson is immune for those acts.

■ Plaintiff, however, asserts that Wilson acted in a non-legislative, executive capacity when he instructed the Zoning Hearing Examiner not to validate Plaintiff's permit to operate a vehicle towing station. Defendants argue that Wilson's

---

**4.** Defendants contend that Wilson did not propose CB–13–2000. However, the legislative record is clear that Wilson proposed the challenged portion of that bill, which introduced a definition of "Truck Marshalling" and amended the existing definition of "Trucking Operation."

alleged communication to the Zoning Hearing Examiner is irrelevant to Plaintiff's constitutional challenges to the ordinances in the case at bar. However, purposeful discrimination which singles out an individual in the context of a permit application, as a matter of law, may give rise to an equal protection claim. *See Cordeco Development Corp. v. Santiago Vasquez,* 539 F.2d 256 (1st Cir.), *cert. denied,* 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976) (affirming ruling that local officials denied plaintiff equal protection where denial of permit was based on illegitimate political or personal motives). To the extent that Defendant Wilson assumed a non-legislative role in dealing with Plaintiff's request for validation of his permit, he is not entitled to legislative immunity. *Scott v. Greenville County,* 716 F.2d at 1423. If that is the case, then Wilson may be entitled to assert only qualified immunity under the standards articulated in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *Id.* The Court finds that there is a genuine issue of material fact as to whether Wilson committed the alleged act within the scope of his legislative capacity.

Assuming, *arguendo,* that Wilson committed the act in a non-legislative capacity, there remains a question of whether Wilson may claim qualified immunity. Qualified immunity is defeated when the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, or it he took the action ... with the malicious intention to cause a deprivation of constitutional rights or other injury ...." *Harlow,* 457 U.S. at 815, 102 S.Ct. 2727. The Court finds that a genuine issue of material fact exists as to whether Wilson's directive to the Zoning Hearing Examiner was undertaken with malice or

the intention to violate Plaintiff's constitutional rights and cause Plaintiff economic harm. Accordingly, Defendants' Motion for Summary Judgment as to Defendant Wilson will be denied.

### Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment will be granted as to Count I of the Amended Complaint as to CB–20–2000 and the final sentences of the definitions of "Truck Marshalling" and "Trucking Operation" in CB–13–2000. In all other respects, Plaintiff's Motion will be denied. Defendant's Motion for Summary Judgment will be denied. An appropriate order follows.

### ORDER

The Court having considered Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment, for the reasons set forth in the attached Memorandum Opinion, it is this 26th day of March, 2004, HEREBY ORDERED, as follows:

1. Defendants' Motion for Summary Judgment is DENIED.

2. Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART, as follows:

 a. Prince George's County Zoning Ordinance CB–20–2000, as enacted, is facially unconstitutional in violation of the Commerce Clause of the United States Constitution;

 b. The portion of the definition of "Truck Marshalling" set forth in Prince George's County Zoning Ordinance CB–13–2000, which states that, "[t]ruck marshalling is not permitted within the County to serve properties outside the County," as enacted, is facially unconsti-

tutional in violation of the Commerce Clause of the United States Constitution.

c. The portion of the definition of "Trucking Operation" set forth in Prince George's County Zoning Ordinance CB–13–2000, which states that, "[a] 'Trucking Operation' may not include 'Truck Marshalling' which serves a use or a property outside the County," as enacted, is facially unconstitutional in violation of the Commerce Clause of the United States Constitution;

d. Defendants are hereby permanently enjoined from enforcing CB–20–2000 and the portions of CB–13–2000 described in 2.b. and 2.c., as enacted.

e. In all other respects, Plaintiff's Motion for Partial Summary Judgment is DENIED.

3. The Clerk of the Court shall transmit copies of this Order and the Memorandum Opinion to counsel for the parties.